NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 20-2018
_____

YOGINI SHANTI BHAI PATEL,
                                        Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

_____

On Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA A206-021-818)
Immigration Judge: Annie S. Garcy

_____

Submitted Under Third Circuit LAR 34.1(a)
January 28, 2021

Before:   JORDAN, MATEY, *Circuit Judges*,
and BOLTON, *District Judge*.

(Filed: January 29, 2021)
_____

OPINION**
_____

_____

    * The Honorable Susan Bolton, Senior United States District Judge for the District of Arizona, sitting by designation.

    ** This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

JORDAN, *Circuit Judge*.

Yogini Patel seeks review of a decision of the Board of Immigration Appeals ("BIA") affirming the denial of her application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). In addition, she argues that the denial of her motion to substitute counsel violated her right to due process. We will deny her petition.

## I. BACKGROUND

Patel is a twenty-eight-year-old citizen of India. She fled India due to alleged abuse by her father and entered the United States without admission or inspection in 2013. Officials with Immigration and Customs Enforcement detained her and served her with a Notice to Appear before releasing her on her own recognizance.

Patel retained Attorney Cindy Ramjattan-Paul in November of 2014, who promptly entered her appearance in the Newark, New Jersey immigration court. Although Patel's hearing was originally scheduled for September 29, 2015, an immigration judge ("IJ") granted Patel's motion for an adjournment due to pregnancy. On February 16, 2016, Ramjattan-Paul represented Patel at a conference during which the IJ set another date for a merits hearing, this one to take place more than two years later, on April 18, 2018. On that same day in February 2016, Ramjattan-Paul filed an application on behalf of Patel for asylum, withholding of removal, and relief under the CAT. Patel did not attend the February conference because she had given birth to her daughter ten days before.

Patel moved to Illinois on April 1, 2018, shortly before her rescheduled merits hearing in Newark. Also just before her move, Patel hired Attorney Mike Sethi to represent her in her immigration proceedings. Sethi promptly filed motions to substitute counsel, to continue the merits hearing, to change the venue of the case to Illinois, and for leave to appear by telephone. The motion to change venue asserted that Patel would be prejudiced by proceedings in Newark because she had witnesses residing in Illinois who would not travel to New Jersey for the hearing.

The IJ denied the motion to substitute counsel because it was filed without proof of service on Ramjattan-Paul. The IJ also noted that none of the motions explained why Patel moved to Illinois or why she had waited until the last moment to try to switch attorneys. Sethi then refiled the motions with proof of service on Ramjattan-Paul. The IJ denied them as untimely but indicated that she would reconsider and grant the motion to substitute counsel if Sethi appeared and was prepared to proceed on the merits at the April 18 hearing in Newark. Sethi refiled the motions once again, this time with a motion to permit late filing, and the IJ again denied the motions.

At the hearing on April 18, 2018, Attorney Constance Hill appeared to present Sethi's motion to substitute counsel, although she was not prepared to proceed on the merits. Ramjattan-Paul orally moved to withdraw because Patel had hired new counsel and had not responded to Ramjattan-Paul's attempts to communicate with her, which she explained included "several letters, phone calls, and so forth." (A.R. at 93.)

Hill elicited testimony from Patel to support the motion to substitute counsel. Patel testified that she began to reach out to Ramjattan-Paul one-and-a-half to two

3

months prior to the hearing but that Ramjattan-Paul was not in the office each time she called. She explained that she decided to hire new counsel because she could not get in touch with Ramjattan-Paul. In response to Ramjattan-Paul's questioning, Patel acknowledged that she had received a letter from Ramjattan-Paul dated February 2, 2018, alerting her of the upcoming hearing, and that she did not begin to reach out to Ramjattan-Paul's office until weeks after receiving that letter. Patel also testified that she moved to Illinois knowing that she had a hearing less than three weeks later in Newark. When the IJ asked her if she had witnesses present, Patel, apparently puzzled, responded, "[w]itnesses for me?" and stated that she did not have any witnesses at the hearing. (A.R. at 112-13.)

The IJ ultimately denied the motion to substitute counsel, explaining that she viewed Patel's last-minute move to Illinois and failure to contact Ramjattan-Paul as delay tactics. The IJ further explained that Sethi's motions "border[ ] ... on misconduct" by suggesting material witnesses resided in Illinois when Patel seemed to have no knowledge of any witnesses. (A.R. at 115.) The IJ denied Sethi's motions as "frivolous and lacking good cause and ... dilatory." (A.R. at 41.) The IJ also denied Ramjattan-Paul's motion to withdraw.

Proceeding with Ramjattan-Paul as her counsel for the merits hearing, Patel testified that she left India because her father was an alcoholic and gambling addict who verbally and physically abused her. For example, her father shoved her when she was young, causing her to sustain an injury to her forehead. On different occasions, he slapped her across the face, charged toward her, and threw a glass in her direction. She

4

testified that she did not have to go to the hospital for any injuries sustained from her father's actions. Patel also explained that her father would not let her get an education or get married if she stayed in India. He also took the money generated from their family's farm to buy alcohol, and he frequently beat her mother.

Patel testified that she never sought assistance from the police because she did not want to complain about her own father. Instead, she went to live with her uncle who advised her to report her father's abuse to the police. Her siblings currently live with that uncle. Patel also testified that she never attempted to relocate to another part of India because of a lack of money and job opportunities. If she returned to India, she explained that she would face more harm because her father is angry that she left without his permission.

Patel also testified that she gave birth to a daughter in February of 2016 and that she would probably marry her daughter's father. At the time of the hearing, Patel's daughter was in India, staying with the parents of the father of the little girl. Patel said that her parents know she has a daughter but do not know where the baby is currently living.

At the conclusion of the hearing, the IJ denied Patel's application for asylum, withholding of removal, and relief under the CAT. The IJ determined that Patel had claimed membership in a particular social group comprised of members of her immediate family, but denied her asylum request because her testimony did not establish the government of India was unable or unwilling to control her father since she never made a complaint to the police, and she testified that the reason she did not file a complaint was

that she did not want to report her own father. In addition, her uncle's suggestion that she should call the police indicated that police intervention could be effective. The IJ noted that Patel failed to establish a country-wide fear of future persecution because she could safely relocate to live with her uncle, who currently houses her siblings, or she could reside with her child's paternal grandparents. The IJ explained that it was those reasons that caused Patel's asylum application to fail, not a lack of corroboration or witnesses.

Because the asylum application failed, the IJ further concluded that Patel could not meet the more demanding burden for withholding of removal. Finally, the IJ denied the application for protection under the CAT because Patel did not testify that she fears torture at the hands of any public official and her failure to report her father's abuse to the police, coupled with lack of evidence that the police would acquiesce in such abuse, precluded a finding that public officials would permit her father's allegedly abusive conduct.

Patel appealed the IJ's decision to the BIA, arguing that the IJ deprived her of due process by denying her motion to substitute counsel and that it was error to deny her applications for asylum, withholding of removal, and protection under the CAT. The BIA dismissed the appeal after adopting and affirming the decision of the IJ.

This petition for review followed.

## II. DISCUSSION[1]

### A. Patel was not denied due process.

We review due process claims de novo. *Singh v. Gonzales*, 432 F.3d 533, 541 (3d Cir. 2006). Noncitizens are "entitled to a full and fair hearing of [their] claims and a reasonable opportunity to present evidence." *Id.* (citation omitted). To establish a due process violation, a noncitizen "must show that substantial prejudice resulted from the alleged procedural errors." *Delgado-Sobalvarro v. Att'y Gen.*, 625 F.3d 782, 787 (3d Cir. 2010). While Patel argues that she should have been permitted to change counsel,[2] she does not assert that substantial prejudice resulted. Her argument therefore fails.

According to Patel, Ramjattan-Paul refused to communicate with her in preparation for the hearing. But the IJ found that Patel was the unresponsive party in the attorney-client relationship: Patel only began reaching out to Ramjattan-Paul one-and-a-half to two months prior to the hearing on April 18, 2018, even though she had known about the hearing date for two years. Patel did not attempt to reach out to Ramjattan-Paul until several weeks after receiving the lawyer's letter in early February 2018. Although Patel argues that attempting to contact her attorney only two months prior to her hearing

---

[1] We have jurisdiction under 8 U.S.C. § 1252.

[2] Patel mentions briefly that the IJ's denial of her motions to continue the merits hearing, to change venue, and for telephonic appearance also deprived her of due process. Because she does not advance any arguments in support of that conclusory statement, those arguments are waived. *Khan v. Att'y Gen.*, 691 F.3d 488, 495 n.4 (3d Cir. 2012) ("[A]n issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue will not suffice to bring that issue before this court." (quoting *Skretvedt v. E.I. DuPont DeNemours*, 372 F.3d 193, 202-03 (3d Cir. 2004))).

7

was "reasonable" because two months would have been sufficient for Ramjattan-Paul to file any motions in advance of the 15-day filing deadline, that argument misses the mark. (Opening Br. at 9.) The question before us is not whether Patel's tardy timetable for contacting her attorney might have given the attorney enough time to prepare, but whether the record supports the IJ's determination that Patel was deliberately dilatory. *See Radiowala v. Att'y Gen.*, 930 F.3d 577, 581 (3d Cir. 2019) ("We ... regard … factual determinations as 'conclusive unless any reasonable adjudicator would be compelled to conclude the contrary.'") (citation omitted); *cf. Ponce-Leiva v. Ashcroft*, 331 F.3d 369, 375 (3d Cir. 2003) (finding no abuse of discretion or denial of petitioner's right to counsel where the IJ denied a continuance to a petitioner who filed the motion last-minute and failed to secure alternative counsel). It does. Patel had over two years' notice of her hearing date but at the last minute tried to change attorneys and get a continuance. The record thus supports the IJ's determination that Patel's motions were "dilatory" rather than made in good faith. (A.R. at 41.)

Moreover, as noted earlier, Patel has failed to establish substantial prejudice.[3] To demonstrate substantial prejudice, she needed to show that the procedural defect she complains of had "the *potential* for affecting the outcome of [the] deportation proceedings." *Serrano-Alberto v. Att'y Gen.*, 859 F.3d 208, 213 (3d Cir. 2017) (alterations in original) (citation omitted). She has not done that. She does not explain

---

[3] Although Patel acknowledges the two-pronged due process test in her opening brief, she fails to make any arguments about substantial prejudice, an omission the government contends constitutes waiver. Because we conclude that Patel's due process claim fails on the merits, we need not address the government's waiver argument.

8

how, if the motion to substitute counsel had been granted, her new attorney would have presented evidence having the potential to affect the outcome of her case. *See Singh*, 432 F.3d at 541 ("[The petitioner] nowhere suggests that such [additional] testimony would have ... been anything other than cumulative."). In fact, Patel does not offer a single example of testimony or other evidence she would have adduced if Sethi had been her attorney at the merits hearing.

Patel's due process claim thus fails because she did not demonstrate that the IJ erred or that, if there were error, substantial prejudice resulted.

**B.      The BIA did not err in affirming the IJ's decision denying Patel relief.**

Where, as here, the BIA has adopted the reasoning of the IJ, we review both levels of the agency's decision making. *Kibinda v. Att'y Gen.*, 477 F.3d 113, 118-19 (3d Cir. 2007). "While we review for substantial evidence the [IJ's] factual findings, we review [its] legal determinations de novo, including both pure questions of law and applications of law to undisputed facts." *Blanco v. Att'y Gen.*, 967 F.3d 304, 310 (3d Cir. 2020) (citation omitted) (second alteration in original). Substantial evidence is an "extraordinarily deferential standard" in which we uphold factual findings if they are "supported by reasonable, substantial, and probative evidence on the record considered as

9

a whole." *Romero v. Att'y Gen.*, 972 F.3d 334, 340 (3d Cir. 2020) (quoting *Garcia v. Att'y Gen.*, 665 F.3d 496, 502 (3d Cir. 2011)).

Patel argues that the BIA erred in affirming the IJ's denial of asylum, withholding of removal, and relief under the CAT. We consider each claim for relief in turn.

1.      *Asylum*

To establish eligibility for asylum, Patel must show she "is a 'refugee' within the meaning of the Immigration and Nationality Act." *Blanco*, 967 F.3d at 310 (citing 8 U.S.C. §§ 1101(a)(42), 1158(b)(1)(A)). To do so, she must demonstrate she "is 'unable or unwilling to return to' [her] home country because of past persecution or, in the alternative, a well-founded fear of future persecution, on account of a protected ground— 'race, religion, nationality, membership in a particular social group, or political opinion.'" *Id.* (quoting 8 U.S.C. § 1101(a)(42)). Persecution includes "threats to life, confinement, torture, and economic restrictions so severe that they constitute a real threat to life or freedom." *Id*. at 311 (quoting *Lukwago v. Ashcroft*, 329 F.3d 157, 168 (3d Cir. 2003)). To demonstrate past persecution, she must show that the Indian government "either committed the persecution or was unable or unwilling to control the persecutor." *Id*. at 310 (citation omitted). Establishing a well-founded fear of future persecution requires her to demonstrate that she cannot safely reside anywhere in her home country. *Abdille v. Ashcroft*, 242 F.3d 477, 496 (3d Cir. 2001).

Patel argues that she demonstrated past persecution through her testimony that her father told her to leave college to work on the family farm, hit her and her mother, and demanded money from her to buy alcohol. While, if true, this is a terribly sad story, it

10

does not qualify as past persecution.  Among other shortcomings, it does not show that

the government of India was unable or unwilling to control the abusive behavior of

Patel's father.[4]  *See Blanco*, 967 F.3d at 310.  Patel testified that she did not contact the

police about the domestic abuse because she did not want to complain about her father,

not because the police would do nothing.  Her concern, in fact, seems to be that they

actually would do something to her father.  And, to some degree, the evidence backs that

up.  Her uncle's advice to her to contact the police suggests that a complaint would have

been effective.

Patel also contends that she has a well-founded fear of future persecution if she

returns to India because her father is angry that she left the country against his will.  Even

if what she is afraid of could be called persecution, however, she has not demonstrated

that she fears persecution country-wide.  *See Abdille*, 242 F.3d at 496.  She safely lived

---

[4] We note that Patel's application for asylum appears to have other problems.  It is, for example, questionable whether Patel has established persecution based on a protected ground.  *See Blanco*, 967 F.3d at 310 (explaining the petitioner must establish she is "'unable or unwilling to return to' [her] home country because of past persecution or, in the alternative, a well-founded fear of future persecution, on account of a protected ground").  A protected ground may be comprised of "race, religion, nationality, membership in a particular social group, or political opinion." *Id.* (quoting 8 U.S.C. § 1101(a)(42)).  The only protected ground proposed is membership in a particular social group.  The IJ concluded that Patel "defined a social group comprised of [her] immediate family members[,]" (A.R. at 54,) but we have held that immediate family does not generally constitute a "particular social group" for purposes of qualifying for asylum "unless it has been shown to be socially distinct in the eyes of its society, not just those of its alleged persecutor." *Romero*, 972 F.3d at 342 (quoting *Matter of L-E-A-*, 27 I. & N. Dec. 581, 582 (Op. Att'y Gen. 2019)).  The record does not reflect that Patel's family is "inherently socially distinct." *Matter of L-E-A-*, 27 I. & N. Dec. at 589.  Nor does Patel's testimony show that the mistreatment her father subjected her to was on the basis of race, religion, nationality, or political opinion.  *See Blanco*, 967 F.3d at 310.

11

with her uncle before leaving India and presumably could do so again after returning there. And Patel's testimony that her daughter was temporarily living with the child's paternal grandparents in India indicates that Patel might safely reside in that area as well.

Because Patel failed to demonstrate past persecution or a well-founded fear of future persecution, she did not meet her burden to prove she is eligible for asylum.

### 2. Withholding of Removal

To qualify for withholding of removal, Patel "must establish a 'clear probability of persecution,'" or "that it is more likely than not" that she would suffer persecution upon returning to India. *Blanco*, 967 F.3d at 315 (quoting *Valdiviezo-Galdamez v. Att'y Gen.*, 663 F.3d 582, 591 (3d Cir. 2011)). "Since this standard is more demanding than that governing eligibility for asylum, an alien who fails to qualify for asylum is necessarily ineligible for withholding of removal." *Id.* (quoting *Valdiviezo-Galdamez*, 663 F.3d at 591). Hence, Patel failed to carry her burden with respect to withholding of removal.

### 3. Convention Against Torture

To qualify for relief under the CAT, Patel had to prove "that it is more likely than not that [she] ... would be tortured if removed to" India. *Blanco*, 967 F.3d at 315 (second alteration in original) (quoting 8 C.F.R. § 1208.16(c)(2)). "[T]o show a reasonable fear of torture[,]" Patel had to show she has a reasonable fear of:

> (1) an act causing severe physical or mental pain or suffering; (2) intentionally inflicted; (3) for an illicit or proscribed purpose; (4) by or at the instigation of or with the consent or acquiescence of a public official

who has custody or physical control of the victim; and (5) not arising from lawful sanctions.

*Romero*, 972 F.3d at 343 (quoting *Myrie v. Att'y Gen.*, 855 F.3d 509, 515 (3d Cir. 2017)) (citation omitted).

The IJ denied Patel's CAT claim because Patel did not testify that she feared torture at the hands of any public official, nor did she offer any evidence that any public official in India would acquiesce in the domestic abuse she alleges. She therefore again failed to meet her burden for establishing entitlement to relief.

## III.   CONCLUSION

For the foregoing reasons, we will deny the petition for review.

13