PRECEDENTIAL

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

_____

No. 19-3550

_____

DAVID CASTILLO ROMERO,

Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

_____

On Petition for Review of an Order of the U.S. Department of
Justice Executive Office for Immigration Review
Immigration Court
(Immigration Court No.: A201-067-060)
Immigration Judge: Alice S. Hartye

_____

Submitted under Third Circuit L.A.R. 34.1(a)
July 2, 2020

(Opinion Filed:  August 25, 2020)

Before:  GREENAWAY, JR., SHWARTZ, and RENDELL,
*Circuit Judges*

Sandra L. Greene
Greene Fitzgerald Advocates and Consultants
2575 Eastern Boulevard
Suite 208
York, PA 17402

Counsel for Petitioner

Anthony C. Payne
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Washington, DC 20044

Kathleen K. Volkert
United States Department of Justice
Office of Immigration Litigation
LSB 10234
P.O. Box 878
Washington, DC 20044

Counsel for Respondent

## O P I N I O N

**RENDELL**, <u>Circuit Judge</u>.

David Castillo Romero ("Romero") petitions for review of an Immigration Judge's ("IJ") determination that Romero was not entitled to relief from reinstatement of his prior removal order. The IJ affirmed the asylum officer's determination that Romero did not have a reasonable fear of torture as required for relief under the Convention Against Torture ("CAT") or a reasonable fear of persecution as required for withholding of removal. Although the government argues that we should review the IJ's decision under the "facially legitimate and bona fide reason" standard, we will instead look to whether the IJ's determinations are supported by substantial evidence. We find that they are. We will therefore deny Romero's petition for review.

## I

Romero is a native and citizen of Mexico. DHS Administrative Record ("D.A.R.") at 28. In 2011, Romero sought admission to the United States at an airport in Houston, Texas. *Id*. Relying on a fraudulent United States passport, he claimed to be a United States citizen. *Id.* DHS issued a Notice and Order of Expedited Removal to Romero under 8 U.S.C. § 1225(b)(1), charging him with inadmissibility on three grounds: under 8 U.S.C. § 1182(a)(6)(C)(i) as an alien who by fraud or willfully misrepresenting a material fact sought admission to the United States; under 8 U.S.C. § 1182(a)(6)(C)(ii) as an alien who falsely represented himself as a United States citizen; and under 8 U.S.C. § 1182(a)(7)(A)(i)(I) as an alien who at the time of his application for admission was not in possession of a valid entry document. *Id.* at 10-11. Romero was eventually removed to Mexico. Executive Office for Immigration Review Administrative Record ("E.A.R.") at 125.

In July 2013, Romero reentered the United States. *Id*. DHS issued to Romero a Notice of Intent/Decision to Reinstate Prior Order pursuant to 8 U.S.C. § 1231(a)(5), reinstating Romero's removal order from 2011. *Id.* Romero was then removed to Mexico. *Id.*

In September 2013, Romero reentered the United States again. *Id.* at 124. Romero evaded immigration officials for almost six years until July 24, 2019. *Id.* DHS again issued to Romero a Notice of Intent/Decision to Reinstate Prior Order under 8 U.S.C. § 1231(a)(5), D.A.R. 2, which states:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

*Id*.

Although the plain text of this provision appears to prohibit any application for relief, other statutory provisions require that an alien like Romero who is subject to removal under § 1231(a)(5) be given the opportunity to seek two forms of relief. First, pursuant to 8 U.S.C. § 1231(b)(3)(A), an alien subject to reinstatement of a removal order may seek withholding of removal if the alien has a reasonable fear that he or she will be subject to persecution based on his or her race, religion, nationality, membership in a particular social group,

4

or political opinion. *Bonilla v. Sessions*, 891 F.3d 87, 90-91 (3d Cir. 2018) (citing *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 35 n.4 (2006) (citing 8 U.S.C. § 1231(b)(3)(A))); 8 C.F.R. §§ 208.31, 241.8(e) (2020).

Second, pursuant to Congress's adoption of the Convention Against Torture in the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), Pub. L. No. 105-277, div. G, § 2242, 112 Stat. 2681-761, 2681-822, the United States will not "expel, extradite, or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture." *Id*. § 2242(a). Pursuant to this requirement, an alien subject to reinstatement of a removal order may not be removed if he or she is likely to be subject to torture, defined as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1) (2020).

These two forms of relief are available to aliens subject to removal under 8 U.S.C. § 1231(a)(5). That is so because when such an alien "expresses a fear of returning to the country designated" in his or her prior removal order, he or she must be "immediately referred to an asylum officer for an interview to determine whether [he or she] has a reasonable fear of persecution or torture." 8 C.F.R. § 241.8(e) (2020). This type of interview is often referred to as a "reasonable fear" interview.

In a "reasonable fear" interview, pursuant to the relevant legal standards for withholding of removal and CAT relief, the asylum officer looks to whether the alien has

5

demonstrated "a reasonable possibility that he or she would be persecuted on account of his or her race, religion, nationality, membership in a particular social group or political opinion, or a reasonable possibility that he or she would be tortured in the country of removal." 8 C.F.R. § 208.31(c) (2020). The alien "may present evidence, if available, relevant to the possibility of persecution or torture." *Id.* The alien may also be represented by counsel or "an accredited representative," his or her representative may "present a statement at the end of the interview," and the alien must be provided an "opportunity to correct errors" in the asylum officer's summary of the material facts. *Id.*

If the asylum officer finds that the alien meets this standard, the asylum officer must refer the case to an IJ for a full proceeding to determine if the alien is eligible for relief from removal. 8 C.F.R. § 208.31(e) (2020). But if the officer finds that the alien has not established a reasonable possibility of persecution or torture, the alien may appeal the asylum officer's determination to an IJ, *id.* § 208.31(f)-(g) (2020), who must conduct "an expeditious review of the negative screening determination." Regulations Concerning the Convention Against Torture, 64 Fed. Reg. 8478, 8485 (Feb. 19, 1999). If the IJ "concurs with the asylum officer's determination that the alien does not have a reasonable fear of persecution or torture," the alien is removed. 8 C.F.R. § 208.31(g)(1). If, on the other hand, the IJ determines that the asylum officer's determination was wrong, then the IJ must give the alien an opportunity for a full hearing on his or her claims for withholding of removal or relief under the CAT. 8 C.F.R. § 208.31(g)(2) (2020).

Romero told immigration officials that he feared returning to Mexico. E.A.R. 9-10. Therefore, pursuant to 8 C.F.R. § 241.8(e), Romero was referred to an asylum officer,

6

who conducted a "reasonable fear" interview of Romero, who was represented by counsel. *Id.* At Romero's reasonable fear interview, Romero expounded on his fear of returning to Mexico. He testified that he is afraid to return to Mexico because a man named Arturo Valencia will harm him. E.A.R. 95, 101. Romero testified that Valencia had a prior relationship with Romero's wife, that Valencia was the father of his wife's daughter, that Valencia had been deported from the United States to Mexico, and that Valencia was a member of the New Generation Cartel in Mexico. *Id.* at 101-02. Romero indicated that Valencia had threatened, over the phone, to kill him and his wife if they did not give Valencia his daughter. *Id.* Romero testified that in May 2013, Valencia and others went to Romero's house in Mexico and shot at the house as a warning, although Romero was not there at the time. *Id.* Valencia never physically harmed Romero. *Id.*

Romero testified that he is afraid to return to Mexico because Valencia may find out through acquaintances or through Facebook that he has returned. *Id.* at 114-15. Romero stated that he has never been harmed or threatened by a Mexican public official; that he does not fear future harm from a Mexican public official; and that he has no evidence that Valencia is connected to any Mexican public official. *Id.* 116-17. He also stated that he has never been harmed, nor does he fear harm in Mexico based on his race, religion, sex, political opinion, or membership in a particular social group. *Id.* at 116.

The asylum officer assigned to Romero's case determined that Romero had not demonstrated a reasonable fear of persecution or torture under the relevant legal standards, and the supervisory asylum officer approved that determination. E.A.R. at 89-97. The officer found that Romero had not shown that the harm he fears from Valencia

7

was on account of a protected ground as required for withholding of removal or that the Mexican government would consent or acquiesce to the harm that he fears as required for a reasonable fear determination.[1] E.A.R. 96.

Romero appealed the officers' determinations to an IJ. E.A.R. 88. The IJ reviewed Romero's reasonable fear interview and heard Romero's testimony. E.A.R. 5-20. Romero reiterated his statement that he fears returning to Mexico because he had been threatened by Valencia by phone but that Valencia had never acted on the threats. E.A.R. 11. He stated that he did not report the threats to the police or seek the protection of the police in Mexico. E.A.R. 13.

The IJ concurred with the asylum officer's decision. The IJ explained that Romero's persecution claim failed because he had not "established a nexus to a protected ground" and therefore had not "established a reasonable possibility of being persecuted based upon a protected ground." Executive Office for Immigration Review Administrative Record at 17. As to his CAT claim, Romero's counsel argued that Romero had a reasonable fear of torture because he feared that Valencia would harm him and that the Mexican government would acquiesce to such gang-related violence as part of a strategy to "allow the cartels to fight each other, so the government doesn't have to do it because the government has been unable to." *Id.* at 16. The IJ rejected this argument:

> I would recognize that crime, corruption, and
> gang violence are problematic and prevalent in

---

[1] The asylum officer also made a finding, not at issue on appeal, that Romero's testimony was partially not credible. E.A.R. 94-95.

Mexico, but the country is taking steps to address that issue. Here, [Romero] did not seek protection from the authorities. He does assert that he believes that [the government's policies and the harm he fears] are connected, but I don't have persuasive or specific evidence establishing that. So I'm not able to find that he's established his burden.

*Id.* at 17.

## II

We have jurisdiction under 8 U.S.C. § 1252(a)(1). *See Bonilla*, 891 F.3d at 90 n.4 (holding that when an IJ concurs with the asylum officer's negative reasonable fear determination, the IJ's decision "constitutes a final order of removal over which we have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1)").

## III

We must first decide which standard of review applies to the IJ's determination that Romero does not have a reasonable fear of persecution or torture. Despite the government's urging to the contrary, we will apply the substantial evidence standard. Generally, when we review findings of fact in the immigration context, we review the findings for substantial evidence. *See, e.g.*, *Herrera-Reyes v. Att'y Gen.*, 952 F.3d 101, 106 (3d Cir. 2020) (citing *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)). Under this "extraordinarily deferential standard," we uphold the IJ's findings if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole."

*Garcia v. Att'y Gen.*, 665 F.3d 496, 502 (3d Cir. 2011) (quotation marks and citations omitted). When we review for substantial evidence, "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Sandie v. Att'y Gen.*, 562 F.3d 246, 251 (3d Cir. 2009) (quoting 8 U.S.C. § 1252(b)(4)(B)).

The government argues that we should look only to whether the IJ furnished a "facially legitimate and bona fide reason" for her determination that Romero did not have a reasonable fear of torture or persecution. Specifically, the government urges that because "a negative reasonable fear determination . . . is similar to other kinds of executive decisions to which the courts have" applied the deferential "facially legitimate and bona fide reason" standard, we should apply it here as well. Resp't's Br. at 20-21. The government's argument relies in part on its assertion that a reasonable fear determination is only a threshold agency assessment of the merits of an alien's claims, not a final order of removal or a decision denying an alien's application for asylum, withholding of removal, or relief under the CAT.

Courts initially developed and applied the "facially legitimate and bona fide reason" standard in a limited and distinctive setting: challenges to government decisions to deny visas. Because "the power to exclude aliens is inherent in sovereignty, necessary for maintaining normal international relations and defending the country against foreign encroachments and dangers," it is "a power to be exercised exclusively by the political branches of government." *Kleindienst v. Mandel*, 408 U.S. 753, 765 (1972) (quotation marks and citation omitted). Accordingly, for the most part, the Executive's decisions about visa eligibility are not reviewable in court.

10

However, a court may review a visa denial in the limited circumstance where the visa denial potentially infringes on the constitutional rights of American citizens. *See, e.g.*, *id.* at 765–70 (reviewing American citizens' First Amendment challenge to denial of an alien's visa application where American citizens sought to but could not hear from the alien at an academic conference because the alien was denied a visa). In such cases, because of the "plenary congressional power to make policies and rules for exclusion of aliens" and because "Congress has delegated conditional exercise of this power to the Executive," courts review the Executive's exercise of this delegated discretion only to ensure that the decision-maker proffers "a facially legitimate and bona fide reason," but "the courts will [not] look behind the exercise of that discretion," even when the constitutional rights of American citizens are indirectly implicated. *Id.* at 769–70.

Other courts have extended this standard of review to review of denials of temporary admission to the United States via parole, *see Andrade-Garcia v. Lynch*, 828 F.3d 829, 835 (9th Cir. 2016) (citing *Nadarajah v. Gonzales*, 443 F.3d 1069, 1082 (9th Cir. 2006); *Mason v. Brooks*, 862 F.2d 190, 193-94 (9th Cir. 1988)), and we have applied it to certain constitutional challenges to immigration statutes, *see, e.g.*, *Flores-Nova v. Att'y Gen.*, 652 F.3d 488, 492 (3d Cir. 2011) ("The standard of review applied in equal protection cases that do not involve suspect classes or the exercise of a fundamental constitutional right requires a 'facially legitimate and bona fide' rationale supporting the immigration statute in question."); *Kamara v. Att'y Gen.*, 420 F.3d 202, 217 (3d Cir. 2005) (applying the "facially legitimate and bona fide reason" standard to determine that the state-created danger doctrine did not "extend[] . . . to final orders of removal").

11

But we reject the government's argument that the "facially legitimate and bona fide reason" standard should govern our review of the IJ's determination here. In rejecting the government's argument on this issue, we follow the lead of the Ninth Circuit in *Andrade-Garcia v. Lynch*, in which the court held that the "facially legitimate and bona fide reason" standard, which was developed in and applied to cases in the "related, but different, context" described above, should not apply to reasonable fear determinations. 828 F.3d at 833-36. We note two reasons for so holding.

First, as explained in *Andrade-Garcia*, unlike in the relatively unconstrained visa application context, Congress has indicated an intent to limit the Executive's discretion to impose a reinstated order of removal. Although it is true that the text of § 1231(a)(5) itself precludes applications for relief, Congress has nonetheless restrained the Executive from removing an alien to a country in which there are substantial grounds for believing the alien would be subject to torture. *Fernandez-Vargas*, 548 U.S. at 35 n.4 (aliens subject to reinstatement of removal may still apply for and be awarded CAT relief). And Congress has also acted to ensure that petitioners subject to reinstatement of a prior removal order may petition for withholding of removal if they fear persecution in the country to which they would be removed. *See id*. Accordingly, Congress has also given us express authority to review Executive-branch decision-making in final orders of removal like the reinstatement order at issue in this case to ensure, among other things, that the Executive's decision-making accords with the statutory requirements described above. 8 U.S.C. § 1252(a); *see Bonilla*, 891 F.3d at 90 n.4 (IJ's negative reasonable fear decision "constitutes a

final order of removal over which we have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1)").

Second, we note that the substantive and procedural similarities in reasonable fear proceedings and removal proceedings support our decision to apply the same standard of review—substantial evidence—in both settings. Although these two types of cases are not identical, in reasonable fear proceedings, as in removal proceedings, asylum officers make findings of fact based on evidence presented by the alien. *See, e.g.*, 8 C.F.R. §§ 208.31(c); 241.8(e) (2020); *Bonilla*, 891 F.3d at 91. In both settings, there are procedures for an initial fact-finding interview about an immigrant's eligibility for relief as well as a procedure for appealing this initial determination to an IJ. And, in both proceedings, if the alien's case fails, he or she faces the severe consequence of removal from the United States. In other words, we reject the government's assertion that a reasonable fear determination, unlike a traditional removal proceeding, is only a discretionary, threshold agency assessment of the merits of an alien's claims for withholding of removal and relief under the CAT. Instead, the similarities between these two types of proceedings bolster our decision to apply the substantial evidence standard to fact-finding determinations by immigration officials in both scenarios.

For these reasons, we will review the IJ's denial of Romero's petitions for CAT relief and withholding of removal for substantial evidence. *See Andrade-Garcia*, 828 F.3d at 833-36.

## IV

The IJ's denials of Romero's persecution and CAT claims are supported by substantial evidence. As noted above,

13

under the "extraordinarily deferential" substantial evidence standard, we uphold the IJ's determination if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Garcia*, 665 F.3d at 502. When we review for substantial evidence, "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Sandie*, 562 F.3d at 251.

Substantial evidence supports the IJ's denial of Romero's persecution claim. The IJ determined that Romero's claim failed because he had not shown that the harm that he fears from Valencia is connected or related to a statutorily protected ground, such as Romero's race, religion, nationality, membership in a particular social group, or political opinion.

We agree. There is no indication that Romero would likely be persecuted based on any of these characteristics. Rather, based on the evidence in the record, Romero could only conceivably have asserted that he fears persecution based on his membership in his stepdaughter's family, which we have ruled does not qualify as a "particular social group" for these purposes. *See, e.g.*, *S.E.R.L. v. Att'y Gen.*, 894 F.3d 535, 556-57 (3d Cir. 2018) (affirming BIA's determination that alien "had not identified sufficient evidence that immediate family members of Honduran women unable to leave a domestic relationship are viewed as socially distinct within Honduran society"); *Matter of L-E-A-*, 27 I. & N. Dec. 581, 582 (U.S. Att'y Gen. 2019) ("[A]n alien's family-based group will not constitute a particular social group unless it has been shown to be socially distinct in the eyes of its society, not just those of its alleged persecutor."). Similarly, Romero's fear of personal conflict with Valencia does not suffice to entitle him to relief on this basis. *See Gonzalez-Posadas v. Att'y Gen.*, 781 F.3d

14

677, 684-85 (3d Cir. 2015) ("Conflicts of a personal nature and isolated criminal acts do not constitute persecution on account of a protected characteristic."). Therefore, because the record does not compel a contrary result, substantial evidence supports the IJ's finding that Romero did not have a reasonable fear of persecution in Mexico. *Sandie*, 562 F.3d at 251.

The IJ's denial of Romero's torture claim is also supported by substantial evidence. In order to show a reasonable fear of torture under the CAT and its implementing regulations, an alien must show that he has a reasonable fear of:

> (1) an act causing severe physical or mental pain or suffering; (2) intentionally inflicted; (3) for an illicit or proscribed purpose; (4) by or at the instigation of or with the consent or acquiescence of a public official who has custody or physical control of the victim; and (5) not arising from lawful sanctions.

*Myrie v. Att'y Gen.*, 855 F.3d 509, 515 (3d Cir. 2017) (quoting *Auguste v. Ridge*, 395 F.3d 123, 151 (3d Cir. 2005)); *see also* 8 C.F.R. § 208.18(a)(1) (2020). The IJ determined that Romero did not have a reasonable fear of torture under this standard because Romero had not indicated that the torture he feared would be executed "by or at the instigation of or with the consent or acquiescence of a public official who has custody or physical control of the victim," *id.*, because although "crime corruption, and gang violence are problematic and prevalent in Mexico, . . . the country is taking steps to address that issue" and, in any case, Romero has not sought "protection from the authorities," Executive Office for Immigration Review Administrative Record at 17.

15

The record evidence does not compel a contrary result. *See Sandie*, 562 F.3d at 251. Romero's testimony and the record's evidence about torture in Mexico are not sufficient to require us to conclude that Romero has a reasonable fear of being tortured "by or at the instigation of or with the consent or acquiescence of" an official in the Mexican government. The IJ's finding that Romero did not have a reasonable fear of torture is therefore supported by substantial evidence.[2]

## V

Because substantial evidence supports the IJ's determinations that Romero did not have a reasonable fear of torture or a reasonable fear of persecution, we will deny his petition for review.

---

[2] Romero also presents indistinct and unclear constitutional claims, including claims that he was denied continuances and that because United States Citizenship and Immigration Services "misapplied the correct legal standard," it "violated [his] due process rights." Pet'r's Br. at 23-26. First, as the government correctly points out, there is no evidence to suggest that Romero requested any continuances in this case, so we reject his constitutional claim on this basis. Second, we reject Romero's claim that the IJ applied the wrong standard for his CAT claim: as noted above, the IJ appropriately identified the standard for CAT relief and appropriately applied it in Romero's case. Therefore, we reject Romero's constitutional claims.