**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1878
_____

ALHAGI SULAYMAN SAMBA, Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A070-850-900)
Immigration Judge:  Honorable Kuyomars Golparvar
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 28, 2020

Before:  JORDAN, MATEY and NYGAARD, Circuit Judges

(Opinion filed: January 11, 2021)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Pro se petitioner Alhagi Samba petitions for review of a final order of removal and the denial of his application for relief under the Convention Against Torture (CAT). For the reasons detailed below, we will deny the petition.

Samba is a citizen of The Gambia. He entered the United States in 1988, and then overstayed his visa. In 2006, he was convicted in Pennsylvania state court of conspiring to deliver marijuana and violating the corrupt-organizations statute. He was then charged with being removable as an alien who had (1) remained in the United States for a longer time than permitted, see 8 U.S.C. § 1227(a)(1)(B); (2) been convicted of a law relating to a controlled substance, see id. § 1227(a)(2)(B)(i); and (3) been convicted of an aggravated felony, see id. § 1227(a)(2)(A)(iii). Through counsel, Samba conceded removability on the first two grounds, and the Immigration Judge (IJ) sustained the third. Samba applied for asylum, withholding of removal, and CAT relief.

At a hearing before an IJ, Samba testified in support of his applications. He said that he is a member of the minority Jola tribe. The former president of The Gambia, Yahya Jammeh, also a member of the Jola, was a brutal dictator. In 2016, Jammeh was defeated in an election by Adama Barrow, a member of a different tribe. Samba claims that this political transition has caused upheaval and increased discord between tribes, and he fears that he will be tortured in The Gambia as a member of a minority tribe.

In a thorough opinion, the IJ denied all relief to Samba. The IJ concluded that Samba was ineligible for asylum and withholding of removal due to his aggravated felony (which qualified as a particularly serious crime). The IJ also denied Samba's CAT

2

claim, finding that there was no evidence that he would be harmed or mistreated in The Gambia or that the government would acquiesce to any torture. Samba appealed to the Board of Immigration Appeals (BIA), which affirmed the IJ's conclusions and dismissed the appeal. Samba filed a petition for review to this Court.

We have jurisdiction to review a final order of removal under 8 U.S.C. § 1252(a)(1). Because Samba is removable for having been convicted of an aggravated felony, our jurisdiction is generally limited to questions of law and constitutional claims, see id. § 1252(a)(2)(D), although we retain jurisdiction to review factual challenges to the CAT decision, see Nasrallah v. Barr, 140 S. Ct. 1683, 1688 (2020). We review the agency's factual determinations under the substantial-evidence standard, such that "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

Samba argues first that the agency erred in concluding that he was not likely to be tortured in The Gambia. We disagree. Samba was not harmed prior to leaving the country, and he presented no evidence that he would be in danger if he returns. The State Department's Country Reports on Human Rights Practices for 2017 states that there had been no incidents of government-sponsored killings, disappearances, or torture in the past year. See A.R. at 262–63. Indeed, as the IJ accurately explained, "many individuals who left the Gambia due to President Jammeh's awful human rights record have been returning to Gambia, and conditions have generally been improving since [P]resident Jammeh has left." Id. at 94. Thus, the record does not compel the conclusion that Samba

3

would be harmed in The Gambia.  See generally Guzman Orellana v. Att'y Gen., 956

F.3d 171, 181 (3d Cir. 2020) (explaining that "what is likely to happen to the petitioner if

removed" is a factual question).

Samba also argues that the agency erred in concluding that the government would

not acquiesce to his torture.[1]  See generally Quinteros v. Att'y Gen., 945 F.3d 772, 788

(3d Cir. 2019) (discussing acquiescence standard).  Again, the record does not support his

contention.  To reiterate, the State Department's Report says that the new regime in The

Gambia has been dramatically improving conditions in the country and taking active

steps to respond to past abuses.  While Samba refers to a newspaper article that reports

that the government has exacerbated tribal tensions through poor public relations and by

failing to balance the representation of tribal groups in the cabinet, the agency did not err

in concluding that this does not mean that the government would acquiesce to torture.

See generally Romero v. Att'y Gen., 972 F.3d 334, 343 (3d Cir. 2020); Myrie v. Att'y

Gen., 855 F.3d 509, 517–18 (3d Cir. 2017).

Accordingly, we will deny the petition for review.

---

[1] Contrary to Samba's argument that the "[t]he IJ never addressed whether [his] fear of torture from non-government actors could carry his burden under CAT," Br. at 5, the IJ expressly ruled that the government would not acquiescence to any such torture, see A.R. at 76; see also id. at 4 (BIA's opinion stating that the record "does not establish that people of his ethnicity are being frequently targeted for mistreatment rising to the level of torture, or otherwise establish that he will more likely than not be singled out for torture by any actor, for any reason, by or with the acquiescence of a government official" (emphasis added)).