NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-3277
_____

SOLOMON SHIFFERAW GEBRU,
a/k/a Felawshaw Shifferaw Gebru,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
Respondent
_____

On Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA A208-898-930)
Immigration Judge: John Ellington
_____

Submitted Under Third Circuit LAR 34.1(a)
July 7, 2021

Before: AMBRO, JORDAN, BIBAS, *Circuit Judges*.

(Filed: July 9, 2021)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

JORDAN, *Circuit Judge*.

Solomon Gebru seeks review of a decision of the Board of Immigration Appeals ("BIA") affirming the denial of his application for asylum.[1] We will deny the petition.

## I.  BACKGROUND

Gebru is a forty-seven-year-old citizen of Ethiopia. He left Ethiopia in 2005 for South Africa, where he lived for ten years.[2] He arrived in the United States in 2016, wanting political asylum. Officials with the Department of Homeland Security served him with a notice to appear in immigration court for lacking a valid entry document.

Gebru appeared before an immigration judge ("IJ") in York, Pennsylvania and formally requested asylum. He testified that he "was subjected to … beatings by the security forces" in Ethiopia "[b]ecause of [his] involvement in politics[.]" (A.R. at 619.) More specifically, he said that on June 8, 2005, he participated in demonstrations against the government's alleged cancellation of the results of a recent election. By his account, a party called the Coalition for Unity and Democracy won the election and, as a supporter of that political group, he joined the demonstrations "to demand that the government accept[ ] the result of the election[.]" (A.R. at 621.) He carried a sign and chanted slogans. Government security forces arrived to disperse the crowd by force, shooting and beating protestors. e witnessed the security forces shoot someone. Gebru "was beaten on

---

[1] The BIA's decision also affirmed the denial of his applications for withholding of removal and protection under the Convention Against Torture, but Gebru does not challenge those holdings on appeal

[2] Gebru allegedly left South Africa because he was denied asylum protections, in addition to the country's increasing crime rates and the looting of his electronics store.

2

his arms, legs, and back[,]" and he had bruises as a result of the beatings. (A.R. at 13.) The next day, he went to a clinic where he was prescribed antibiotics and pain medication for "soft tissue injury to bilateral arms and legs[,] multiple bruises and swelling on r[igh]t and l[ef]t arms[,] skin abrasion[,] and bruises on r[igh]t and l[ef]t leg[s.]" (A.R. at 841.) Gebru claims that, several days after the demonstration, he received a paper telling him to report to a police station, but that he no longer has a copy of that document.

Gebru's sister, Hermanmine Gebru, also testified as a witness at the initial merits hearing, stating that Gebru came home from the June 8, 2005 demonstration with bruises. She said that police came to their home two days later looking for Gebru, but that he was not home at the time. She also explained that Gebru was involved in the Coalition for Unity and Democracy while he was in Ethiopia, though she did not know if he remained involved after the 2005 demonstration or with what other political groups he might be involved.

Initially, the IJ denied Gebru's application for asylum but granted his application for withholding of removal. On appeal, the BIA remanded for further fact finding and legal analysis. The IJ consequently conducted a second merits hearing. In his second opinion, the IJ denied Gebru's application for asylum as a matter of discretion even though he found that Gebru had established past persecution based on political opinion. The IJ again granted his application for withholding of removal. The BIA, on appeal, held that the "minor injury sustained by" Gebru did not rise to the level of past persecution. (A.R. at 172-73.) On remand, the IJ held a third merits hearing, in which the parties produced only documentary evidence and no additional testimony. Gebru

3

introduced evidence allegedly demonstrating his continued involvement in various political groups. He also produced an affidavit from his father, who said that he, Gebru's father, was detained by Ethiopian security forces for two days in 2018 and interrogated about the continued involvement of Gebru in opposition political groups.

In his third and final opinion dated October 4, 2018, the IJ considered whether Gebru "has shown a well-founded fear of persecution for asylum in the absence of past persecution." (A.R. at 55.) The IJ concluded that Gebru failed to meet his burden "that he has an objectively reasonable well-founded fear of future persecution[.]" (A.R. at 60.) The IJ also denied his application for withholding of removal. Gebru appealed that decision to the BIA, which dismissed the appeal, affirming the decision of the IJ. The BIA afforded diminished weight to Gebru's father's letter, as it was unnotarized and from an interested party.

This petition for review followed.

## II.    DISCUSSION[3]

Gebru argues that the BIA erred in affirming the denial of his application for asylum. To establish eligibility for asylum, he "must show that he is a 'refugee' within

---

[3] The BIA had jurisdiction under 8 C.F.R. § 1003.1(b)(3), and we have jurisdiction under 8 U.S.C. § 1252. Where, as here, "the BIA affirms the IJ's determinations … and only adds its own gloss to the analysis," we review both levels of the agency's decision making. *Doe v. Att'y Gen.*, 956 F.3d 135, 141 (3d Cir. 2020) (citation omitted). "While we review for substantial evidence the [IJ's] factual findings, we review [its] legal determinations de novo, including both pure questions of law and applications of law to undisputed facts." *Blanco v. Att'y Gen.*, 967 F.3d 304, 310 (3d Cir. 2020) (second alteration in original) (citation omitted). Substantial evidence is an "extraordinarily deferential standard" under which we uphold factual findings "if they are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'"

4

the meaning of the Immigration and Nationality Act." *Blanco v. Att'y Gen.*, 967 F.3d 304, 310 (3d Cir. 2020) (citing 8 U.S.C. §§ 1101(a)(42), 1158(b)(1)(A)). To do so, he must demonstrate that he "is 'unable or unwilling to return to' his home country because of past persecution or, in the alternative, a well-founded fear of future persecution, on account of a protected ground— 'race, religion, nationality, membership in a particular social group, or political opinion.'" *Id.* (quoting 8 U.S.C. § 1101(a)(42)). Persecution includes "threats to life, confinement, [and] torture[.]" *Id.* at 311 (quoting *Lukwago v. Ashcroft*, 329 F.3d 157, 168 (3d Cir. 2003)). "[I]solated incidents that do not result in serious injury do not rise to the level of persecution." *Voci v. Gonzales*, 409 F.3d 607, 615 (3d Cir. 2005) (citations omitted). To prove past persecution, Gebru has to show that the Ethiopian government "either committed the persecution or was unable or unwilling to control the persecutor." *Blanco*, 967 F.3d at 310 (citation omitted). If he shows that he suffered past persecution, a rebuttable presumption of a well-founded fear of future persecution is triggered. *Lukwago*, 329 F.3d at 174. Even if Gebru fails to demonstrate past persecution, however, he may still qualify for asylum based on a well-founded fear of future persecution if he returns to Ethiopia. *Id.*

Gebru argues that he demonstrated past persecution through his testimony that he was beaten by government security forces at the June 8, 2005 demonstration. The record, though, supports a contrary conclusion. Though physically painful and no doubt deeply distressing, a single beating resulting in bruising is not enough to rise to the level of past

---

*Romero v. Att'y Gen.*, 972 F.3d 334, 340 (3d Cir. 2020) (quoting *Garcia v. Att'y Gen.*, 665 F.3d 496, 502 (3d Cir. 2011)).

persecution. *See Voci*, 409 F.3d at 615. Unlike the petitioner in *Voci*, who faced "multiple beatings from police," "result[ing] in a hospital stay of approximately three months[,]" *id.* at 614-15, Gebru had injuries far less severe, and he did not seek medical attention until the next day. (A.R. at 841.) While it is true that serious injury need not mean "serious *physical* injury[,]" Gebru's argument that he suffered psychological trauma from witnessing the police shoot another protester was effectively rejected by the BIA and substantial evidence sustains that ruling. *Blanco*, 967 F.3d at 311. Gebru provided no proof of psychological harm before the IJ or BIA. The same is true of his contention that the police summons he allegedly received meant he would be subjected to more physical abuse.

Gebru also contends that he established a reasonable fear of future persecution in Ethiopia based on his political opinion. He first takes issue with the IJ affording diminished weight to his father's letter. Regarding that letter, the BIA limited its ruling to the IJ's reasoning that the letter was unnotarized and from an interested party.[4] That conclusion relates to whether the letter satisfied "standards of reliability and trustworthiness." *Ezeagwuna v. Ashcroft*, 325 F.3d 396, 406 (3d Cir. 2003). Because the letter was unnotarized, uncorroborated, and from an interested family member not subject

---

[4] While Gebru is correct, and the government agrees, that notarization is not required, it can serve to bolster a letter's reliability.

to cross examination, the IJ and BIA were within the bounds of appropriate discretion in affording the letter diminished weight.

Even accepting Gebru's father's letter at face value, however, substantial evidence supports the finding that Gebru's fear of future persecution is not objectively reasonable. The letter does not claim that government officials threatened Gebru himself. *See Long Hao Li v. Att'y Gen.*, 633 F.3d 136, 147 (3d Cir. 2011) (holding that "a letter from [the petitioner's] mother that indicated that the Chinese authorities sought to arrest him" did not compel a finding of a clear probability of persecution). In addition, Gebru's testimony establishes one violent incident at the hands of the Ethiopian government over fifteen years ago, and the evidence does not suggest that his participation in political groups disfavored by the Ethiopian government rises above minimal, low-level involvement. Gebru's political involvement does not appear to be significant enough to continue to draw the Ethiopian government's attention to him.[5] Thus, substantial evidence supports the IJ's finding, affirmed by the BIA, that Gebru does not have a well-founded fear of future persecution.[6]

Because Gebru failed to establish past persecution or a well-founded fear of future persecution, he has not met his burden to prove that he is eligible for asylum.

---

[5] It is for that reason that Gebru's citation to *Myat Thu v. Att'y Gen.*, 510 F.3d 405 (3d Cir. 2007), is inapposite. Unlike Gebru's evidence, the petitioner in *Myat Thu* introduced two letters explaining that "he was *heavily involved* in political activities disapproved by the Burmese government, and which, if accepted as truthful, show he is indeed likely to be someone of whom the Burmese authorities are aware." *Id.* at 415 (emphasis added).

[6] Gebru also argues that the 2016 Country Report notes that security forces used

7

**III.     CONCLUSION**

For the foregoing reasons, we will deny the petition for review.

---

"excessive force and arbitrary arrest in response to the protests, politically motivated prosecutions, and continued restrictions on activities of civil society and NGOs." (A.R. at 446.) That information may help corroborate Gebru's assertion that he was beaten at the June 8, 2005 protest, but does not meaningfully strengthen his argument that he has an objectively reasonable fear of future prosecution if he returns to Ethiopia now.