**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2947
_____

RONAK KUMAR PATEL,
                                    Petitioner
v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA
_____

On Petition for Review of a
Decision of the Board of Immigration Appeals
(A205-704-818)
Immigration Judge: Alberto J. Riefkohl
_____

Submitted Under Third Circuit. L.A.R. 34.1(a)
May 27, 2021
_____

Before: GREENAWAY, JR., SHWARTZ, *Circuit Judges*, AND ROBRENO,* *District Judge*

(Opinion Filed: September 10, 2021)

---

* Honorable Eduardo C. Robreno, District Judge, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

_____

OPINION[*]

_____

GREENAWAY, JR., *Circuit Judge*.

Ronak Kumar Patel petitions for review of an order of the Board of Immigration Appeals ("BIA") dismissing his appeal and affirming a decision of an Immigration Judge ("IJ") denying his application for asylum, withholding of removal, and protection under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"). For the reasons that follow, we will deny Patel's petition for review.

## I.    Background

Patel is a citizen of India and is a Hindu. He fell in love with Karishma Mir, a Muslim woman. Their respective families did not approve of the relationship. Nevertheless, Mir and Patel continued their relationship for nine to ten months.

In August 2012, Mir's brother and others resorted to violence in an effort to force Patel to end his relationship with Mir. On two separate occasions, Mir's brother physically attacked Patel at his workplace. During the first attack, Mir's brother and others punched and kicked Patel until his employer and other shopkeepers intervened. The attackers threatened to kill Patel if he continued his relationship with Mir. Patel's parents took him to the hospital after the attack.

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Twenty days after the first attack, Mir's brother and his associates returned to Patel's workplace. Mir's brother attacked Patel with a hockey stick and his associates beat Patel. One attacker cut Patel with a knife under his eyes. Mir's brother threatened to kill Patel. After the attack, Patel sought medical attention and required stitches on his face and left hand. Patel was hospitalized for three days and then spent fifteen days on bed rest.

Friends and family counseled Patel to leave India. Fearing for his life, Patel fled India and made his way to the United States via Central America. Patel entered the United States on December 31, 2012, and the Department of Homeland Security ("DHS") commenced removal proceedings against him on the same day by serving him with a Notice to Appear, charging him with removability under 8 U.S.C. § 1182(a)(6)(A)(i) as an alien present in the United States without being admitted or paroled. Patel conceded his removability[1] and submitted an application for (1) asylum, (2) withholding of removal, and (3) protection under the CAT.

In a written decision, the IJ found that Patel was credible but was nevertheless ineligible for asylum. The IJ found that the abuse Patel suffered during the two attacks rose to the level of persecution. As a result, Patel was entitled to a rebuttable presumption of a well-founded fear of future persecution. The Government rebutted that presumption "because it was reasonable for [Patel] to relocate within India." A.R. 37. The IJ also determined that Patel failed to establish a subjective fear of persecution that is

---

[1] After Patel declined to designate a country of removal, DHS designated India as Patel's country of removal.

objectively reasonable because there was a lack of evidence that Mir's family was still looking for Patel and that they were motivated to persecute him again. Additionally, the IJ found that Patel failed to "demonstrate a 'pattern or practice' of persecution of individuals in interfaith relationships that the government is unable or unwilling to control." A.R. 37 (quoting 8 C.F.R. § 1208.13(b)(2)(iii)(A)). Because Patel failed to meet his burden of proof for his asylum claim, he necessarily failed to meet the higher standard for withholding of removal.

Turning to Patel's claim for relief under the CAT, the IJ found that Patel had not shown that "it is more likely than not that he will be tortured upon his return to India." A.R. 39. Specifically, the IJ concluded that Patel's CAT claim required the IJ "to string together a series of suppositions[,]" which Patel had not shown are more likely than not to occur. *Id*. Based on a lack of evidence, the IJ rejected Patel's claim that the Indian government would consent or acquiesce to his torture because of Mir's father's alleged influence and connection with members of the government. The IJ denied each of Patel's claims for relief and ordered him removed to India based on the charges in the Notice to Appear.

Patel timely appealed the IJ's order to the BIA, which dismissed his appeal. The BIA affirmed the IJ's determination that DHS had rebutted the presumption that Patel has a well-founded fear of persecution and, as a result, was not eligible for asylum. The BIA noted that country conditions reports indicated that there were attacks on people in interfaith relationships, but "the violence was directed at members of the Muslim minority population, not members of the Hindu majority." A.R. 04. The BIA also discussed Patel's

4

lack of knowledge of Mir's father's connection to the government and Patel's testimony that he and his family had not been contacted by Mir's family in seven years. The BIA concluded that there was no error in the factual findings underpinning the IJ's denial of Patel's claim for relief under the CAT. This timely petition for review followed.

## II.    Discussion

We have jurisdiction to review final orders of removal pursuant to 8 U.S.C. § 1252(a)(1). "Where, as here, 'the BIA's opinion directly states that the BIA is deferring to the IJ, or invokes specific aspects of the IJ's analysis and factfinding in support of the BIA's conclusions, we review both decisions.'" *Thayalan v. Att'y Gen.*, 997 F.3d 132, 137 (3d Cir. 2021) (quoting *Uddin v. Att'y Gen.*, 870 F.3d 282, 289 (3d Cir. 2017) (some internal quotation marks omitted)).[2]

We review a petitioner's challenges to the agency's factual findings under the substantial evidence standard. *Id.* "[T]hat review is highly deferential . . . . The agency's 'findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020) (quoting 8 U.S.C. § 1252(b)(4)(B)). "[W]e uphold the IJ's findings if they are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'"

---

[2] Respondents state that the BIA deferred to the IJ's determinations that "(1) DHS rebutted the presumption of future persecution . . . and (2) Mr. Patel failed to demonstrate it was more likely than not he would suffer torture by or with the consent or acquiesce[nce] of the government if returned to India . . . ." Resp't's Br. 15. We agree with this assessment of the BIA's opinion.

5

*Romero v. Att'y Gen.*, 972 F.3d 334, 340 (3d Cir. 2020) (quoting *Garcia v. Att'y Gen.*, 665 F.3d 496, 502 (3d Cir. 2011)).

Patel raises three primary challenges to the BIA's affirmance of the IJ's denial of his applications for asylum and withholding of removal.[3]  We address each in turn.

*First*, Patel contends that the objective prong of the test, whether he has a well-founded fear of future persecution,[4] is satisfied because "due to the extreme severity of the[] attacks [he] has good reason to fear future persecution."  Pet'r's Br. 8–9.  We, however, lack jurisdiction to address this argument because Patel failed to exhaust it before the BIA.  *See Nkomo v. Att'y Gen.*, 986 F.3d 268, 272 (3d Cir. 2021) ("A noncitizen must exhaust h[is] claim before the BIA for this Court to have jurisdiction over the claim.").

---

[3] Patel forfeited his challenge to the BIA's determination regarding his claim for relief pursuant to the CAT by only referencing torture in the header to a subsection within his brief and once in passing within the body of his brief.  *See John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("[A]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered [forfeited].").

[4] Pursuant to § 208 of the Immigration and Nationality Act ("INA"), the Attorney General may grant asylum to removable aliens if the applicant is a "refugee."  8 U.S.C. § 1158(a).  As relevant here, the INA defines a "refugee" as:

> [A]ny person who is outside any country of such person's nationality . . . and who is . . . unable or unwilling to avail himself or herself of the protection of that country because of persecution or *a well-founded fear of persecution* on account of race, religion, nationality, membership in a particular social group, or political opinion . . . .

8 U.S.C. § 1101(a)(42)(A) (emphasis added).  "The well-found[ed] fear of persecution standard involves both a subjectively genuine fear of persecution and an objectively reasonable possibility of persecution."  *Valdiviezo-Galdamez v. Att'y Gen.*, 663 F.3d 582, 590–91 (3d Cir. 2011).  Determining whether an applicant's fear of persecution is objectively reasonable "requires ascertaining whether a reasonable person in the alien's circumstances would fear persecution if returned to a given country."  *Id.* at 591.

6

While this Court's exhaustion policy is "liberal," neither Patel's notice of appeal nor his brief placed the BIA on notice that he was contesting the IJ's determination that he had a well-founded fear of future persecution based on the severity of the prior attacks. *Id.* Indeed, the BIA concluded that Patel was not raising this issue. A.R. 4 n.1 (noting that Patel did "not argue that he has demonstrated compelling reasons for being unwilling or unable to return to India arising out of the severity of the past persecution he experienced or that he has established a reasonable possibility that he may suffer other serious harm upon removal to India"). Patel has not asserted that the BIA erred in reaching that conclusion.

*Second*, Patel objects to the BIA's finding that he could avoid future persecution by relocating within India. Because Patel established past persecution, he is entitled to a presumption of a well-founded fear of persecution on the same basis as his original claim. 8 C.F.R. § 1208.13(b)(1). The Government may rebut that presumption by proving by a preponderance of the evidence (1) that Patel "could avoid future persecution by relocating to another part of" India and (2) that "under all the circumstances, it would be reasonable to expect [Patel] to do so." 8 C.F.R. § 1208.13(b)(1)(i)(B); *see also Doe v. Att'y Gen.*, 956 F.3d 135, 150 (3d Cir. 2020). Patel contends that it is not reasonable for him to relocate within India because he does not "feel safe" doing so because of Mir's father's "high position in politics" and connections within the government and law enforcement officials. Pet'r's Br. 11.

The BIA's determination that Patel could relocate to another part of India is supported by substantial evidence. Namely, the country conditions evidence before the

7

BIA and the IJ included evidence that religiously motivated attacks against individuals in interfaith relationships was often inflicted upon Muslims, not Hindus like Patel. This evidence supported the finding that Patel could avoid future persecution by relocating to another part of India.

Patel argues that the BIA did not address that his attackers were "politically influential persons with power over law enforcement and the military," which would allow them to locate Patel if he returned to India. Pet'r's Br. 11. Patel's testimony on this issue lacked basic details regarding Mir's father's alleged connections and influence, undermining a finding that Patel would be subject to persecution in other parts of India. For example, Patel did not know what type of work Mir's father engaged in or his position within or in relation to the government. Patel offered no corroborating evidence to support his conclusory assertions about Mir's father's prominence in the community or ability to influence law enforcement. Patel also testified that he did not know whether Mir's family was looking for him, and that approximately one year after he left India, Mir's brother asked Patel's parents about his location, but did not threaten Patel or his parents.

In light of the country conditions evidence, Patel's testimony, and the lack of evidence to corroborate Patel's allegations regarding the influence and power of his attackers, we cannot conclude that a reasonable adjudicator would be compelled to find that Patel could not relocate within India. *See Nasrallah*, 140 S. Ct. at 1692.

*Finally*, Patel contends that he is "entitled to a grant of withholding of removal pursuant to Section 241(b)(3) of the" INA. Pet'r's Br. 12. Because we do not disturb the BIA's finding that Patel failed to demonstrate his eligibility for asylum, he necessarily

8

cannot meet the higher burden of proof for withholding of removal and we will not address the merit of his arguments on this issue. *See S.E.R.L. v. Att'y Gen.*, 894 F.3d 535, 544 (3d Cir. 2018) ("[A]n alien who fails to qualify for asylum is necessarily ineligible for withholding of removal." (quoting *Valdiviezo-Galdamez*, 663 F.3d at 591)).

## III.    Conclusion

For the reasons set forth above, we will deny Patel's petition for review.