NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1282
_____

ISAAC ESPANA-ALONZO,
                                        Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(BIA A216-220-958)
Immigration Judge:  Alice Song Hartye
_____

Submitted Under Third Circuit LAR 34.1(a)
November 15, 2021

Before:   AMBRO, JORDAN, and RENDELL, *Circuit Judges*

(Filed November 18, 2021)
_____

OPINION*
_____

JORDAN, *Circuit Judge*.

Petitioner Isaac Espana-Alonzo suffered a terrible crime in his home country of

Honduras.  Unfortunately, he was unable to identify the assailants or their motives, and,

_____

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

because of that, he did not attempt to involve the authorities. Once in the United States, he submitted an application for asylum and withholding of removal, which was denied because he could not establish his membership in a particular social group, much less point to that membership as a reason for the attack. He also applied for protection under the Convention Against Torture ("CAT"), which was likewise denied because he could not show that governmental authorities would acquiesce or participate in torturing him if he returned to Honduras. Because we agree with those bases for denial, we will deny his petition for review.

## I.    BACKGROUND

Espana-Alonzo is a native and citizen of Honduras. He entered the United States in the fall of 2017 without being admitted or paroled, and the U.S. Department of Homeland Security ("DHS") commenced removal proceedings against him.

In those proceedings, Espana-Alonzo applied for asylum, withholding of removal, and protection under the CAT. He appeared pro se at the merits hearing in his case and answered questions from the Immigration Judge ("IJ") and a DHS attorney.[1] Most notably, he testified that, when he was living in the city of San Pedro Sula in 2016, he was cornered by three armed, masked men in a store. They asked him if he was homosexual, which he denied. They then insulted him with "words that [we]re too big and inappropriate" for Espana-Alonzo to repeat to the IJ. (A.R. at 117.) He tried to walk away, but they robbed him, and one of them raped him, leaving him laying on the floor.

---

[1] Espana-Alonzo's preferred language is Spanish, and a Spanish interpreter assisted at his merits hearing and all prior hearings.

2

He eventually left San Pedro Sula and went back to his hometown, Copan, where he lived with his family for another year before traveling to the United States.

After the hearing, the IJ denied Espana-Alonzo any relief. His appeal, filed by counsel, was dismissed by the Board of Immigration Appeals ("BIA"). He now petitions for review of the denial of asylum and CAT protection.

## II.    DISCUSSION[2]

### A.    Asylum

We see no errors in the IJ's and BIA's decisions that Espana-Alonzo did not demonstrate past persecution "on account of" his membership in a particular social group ("PSG").[3] Before the IJ, Espana-Alonzo's application did not indicate any statutorily protected basis that accounted for his mistreatment. The IJ determined that Espana-

---

[2] The BIA had jurisdiction over Espana-Alonzo's appeal of the IJ's decision under 8 U.S.C. § 1103 and 8 C.F.R. § 1003.1(b). We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1). *Galeas Figueroa v. Att'y Gen.*, 998 F.3d 77, 84 (3d Cir. 2021). "Inasmuch as the BIA adopted and affirmed the IJ's decisions and orders as well as making an independent analysis, we review both the IJ's and the BIA's decisions and orders." *Ordonez-Tevalan v. Att'y Gen.*, 837 F.3d 331, 340-41 (3d Cir. 2016). We review for substantial evidence both the determination whether an applicant establishes a nexus between past persecution and a protected characteristic, *Romero v. Att'y Gen.*, 972 F.3d 334, 342 (3d Cir. 2020), and the findings of fact with respect to potential relief under the CAT, *Valarezo-Tirado v. Att'y Gen.*, 6 F.4th 542, 547-48 (3d Cir. 2021).

[3] Asylum based on past persecution requires an applicant to show (i) that he was targeted for mistreatment that "r[o]se to the level of persecution"; (ii) a nexus – i.e., that the mistreatment was "on account of" a statutorily protected ground, such as membership in a particular social group; and (iii) that the persecution was "committed by the government or forces the government is either unable or unwilling to control." *Doe v. Att'y Gen.*, 956 F.3d 135, 141-42 (3d Cir. 2020) (quoting *Abdulrahman v. Ashcroft*, 330 F.3d 587, 592 (3d Cir. 2003)). Because he was unable to make a showing on the second element, we need not address the others. *INS v. Bagamasbad*, 429 U.S. 24, 25 (1976).

Alonzo was relying on membership in a PSG as his protected ground and that his proposed PSG was "victim[s] of criminal activity[,]" which the IJ decided lacked particularity and therefore was not legally cognizable. (A.R. at 53 (citing *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 236-37 (B.I.A. 2014)).)

On appeal to the BIA, Espana-Alonzo did not challenge that decision.[4] Instead, he argued (as he does here) that the IJ erred in failing to consider his imputed membership in the PSG of "homosexual men in Honduras[.]" (Opening Br. at 10.) But it is the applicant's burden to delineate the PSG he is relying on, 8 C.F.R. § 1208.13(a), and Espana-Alonzo did not propose that specific PSG, or anything resembling it, until his appeal. The BIA did not err in declining to consider the newly proposed PSG, because it could not "make relevant factual findings" pertaining to the delineation of the group or Espana-Alonzo's membership in it. *Matter of W-Y-C- & H-O-B-*, 27 I. & N. Dec. 189, 191 (B.I.A. 2018); *see Honcharov v. Barr*, 924 F.3d 1293, 1296-97 (9th Cir. 2019) (collecting cases "conclud[ing] that the [BIA] may apply a procedural default rule to arguments raised for the first time on appeal").

Even assuming that Espana-Alonzo had timely proposed that PSG, substantial evidence supports the BIA's conclusion that his attackers were motivated by general criminal intent, not any imputation of homosexuality. For example, when asked by the IJ, Espana-Alonzo testified that he "d[id]n't know [what] to say as to why" the attackers

---

[4] Nor does he challenge that decision here. *See Khan v. Att'y Gen.*, 691 F.3d 488, 495 n.4 (3d Cir. 2012) ("We need not address the BIA's denial of the petitioners' motion … because the petitioners did not challenge that denial in their appellate briefs.").

targeted him.  (A.R. at 117.)  And when pressed further, he speculated, "I think they just wanted to harm me without even knowing me because I didn't know them."  (A.R. at 119.)  Despite that testimony, Espana-Alonzo now relies instead on the context of the attack – specifically, the attackers asking if he was homosexual – as evidence that imputed homosexuality was the basis for the assault.  But under the "extraordinarily deferential" substantial evidence standard, *Romero v. Att'y Gen.*, 972 F.3d 334, 342 (3d Cir. 2020), we cannot say that the evidence "compel[s] any reasonable fact finder" to find the nexus requirement satisfied, *see Gonzalez-Posadas v. Att'y Gen.*, 781 F.3d 677, 684 n.5 (3d Cir. 2015); *id.* at 686-87 (holding that substantial evidence supported the decision that persecution was based on reasons other than homosexuality, notwithstanding petitioner's "one-sided interpretation of the record[,]" which contained homophobic comments from persecutors).

According to Espana-Alonzo, the IJ failed to engage in further inquiry despite testimony that the attackers had inquired about his sexuality.  He is correct that "an IJ has a duty to develop an applicant's testimony," *Toure v. Att'y Gen.*, 443 F.3d 310, 325 (3d Cir. 2006), a duty that appears to have both statutory and constitutional bases, *see* 8 U.S.C. § 1229a(b)(1) ("The immigration judge shall administer oaths, receive evidence, and interrogate, examine, and cross-examine the alien and any witnesses."); *Quintero v. Garland*, 998 F.3d 612, 623-24 (4th Cir. 2021) (observing that a developed record is essential for a full and fair hearing, as required by the Fifth Amendment's Due Process

5

Clause).[5]  But the IJ here fulfilled that duty, even with a non-English-speaking, pro se applicant like Espana-Alonzo.

The IJ asked – twice – why Espana-Alonzo thought he was attacked.  Earlier, at an initial hearing, the IJ had instructed Espana-Alonzo on the statutory bases for a finding of persecution and had told him what a successful applicant would have to demonstrate.  At another preliminary hearing, the IJ had explained additional types of evidence that Espana-Alonzo could submit to support his application besides the three supporting witness letters he offered.[6]  *See Quintero*, 998 F.3d at 629 (requiring that IJs "provide respondents with sufficient guidance as to how they may prove the elements of their claims" and "probe into, inquire of, and elicit all facts relevant to a respondent's claims").  Espana-Alonzo does not specify what additional questions the IJ should have asked, which instructions the IJ should have given, or what else the IJ should have done.  Nor does it seem likely that he could, given the clear effort the IJ put into developing the record before and during the merits hearing.

In sum, Espana-Alonzo failed to timely assert his imputed membership among homosexual men in Honduras, and, even if he had done so, substantial evidence in the fully developed record supports the conclusion that he was harmed for other reasons.

---

[5] Assuming Espana-Alonzo is asserting a constitutional claim, we review it de novo.  *Myrie v. Att'y Gen.*, 855 F.3d 509, 515 (3d Cir. 2017).

[6] Indeed, the IJ gave Espana-Alonzo two opportunities to complete the application. The first application was faulty because it contained some responses in Spanish, so the IJ instructed him to complete the application in English with the assistance of a translator, which he did.

## B. Torture Under the CAT

We likewise do not see error in the IJ's finding that it was not more likely than not that Espana-Alonzo would be tortured with the consent or acquiescence of the Honduran government. Espana-Alonzo testified that he was unable to identify his attackers and, because of that, did not report the attack to the authorities. That testimony – and the lack of any evidence connecting the government to the attack – supports the finding that the attack was not inflicted by, at the instigation of, or with the consent or acquiescence of a public official acting in an official capacity. 8 C.F.R. § 1208.18(a)(1). The substantial evidence standard requires that we defer to that finding. *See Romero*, 972 F.3d at 339-40, 343 (deferring to IJ's finding that petitioner lacked reasonable fear of torture given testimony of purely private threats, and no evidence of past harm or fear of future harm by a public official).[7]

## III. CONCLUSION

For the foregoing reasons, we will deny Espana-Alonzo's petition for review.

---

[7] We likewise reject Espana-Alonzo's argument that his as-testified reason for not reporting to the police – his inability to identify the attackers – necessarily suggests a *second* reason for his failure to report, namely that the police would have been willfully blind to the attack. Even assuming that is a reasonable inference, which we doubt, we do not see anything in the record that would require the IJ to make such an inference. *Cf. Valdiviezo-Galdamez v. Att'y Gen.*, 663 F.3d 582, 610 (3d Cir. 2011) (declining to accept the petitioner's proposed inference of willful blindness when an "equally reasonable inference from his testimony" was that Honduran police were investigating his reported attacks even though he did not see any such investigation).