**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 20-1201**

ADAN DE JESUS TOMAS-RAMOS,

Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

On Petition for Review of an Order of an Immigration Judge.

Argued: September 22, 2021                    Decided: February 2, 2022

Before GREGORY, Chief Judge, and HARRIS and RUSHING, Circuit Judges.

Petition for review granted; vacated and remanded by published opinion. Judge Harris wrote the opinion, in which Chief Judge Gregory and Judge Rushing joined.

**ARGUED:** Michael D. Lieberman, KIRKLAND & ELLIS LLP, Washington, D.C., for Petitioner. Patricia E. Bruckner, UNITED STATES DEPARMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Simon Y. Sandoval-Moshenberg, Stacy M. Kim, LEGAL AID JUSTICE CENTER, Falls Church, Virginia; Paul F. Brinkman, Michael A. Francus, KIRKLAND & ELLIS LLP, Washington, D.C., for Petitioner. Ethan P. Davis, Acting Assistant Attorney General, Anthony P. Nicastro, Assistant Director, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

PAMELA HARRIS, Circuit Judge:

After Adan de Jesus Tomas-Ramos, a citizen and native of Guatemala, reentered the United States illegally in 2018, a removal order previously entered against him was reinstated. But because Tomas-Ramos expressed a fear of returning to Guatemala, an asylum officer conducted a screening interview to determine whether he reasonably feared persecution or torture in his home country. The asylum officer determined that Tomas-Ramos failed to establish a reasonable fear of such harm, and so was not entitled to relief from his reinstated removal order. An Immigration Judge ("IJ") concurred with that determination.

Tomas-Ramos now petitions for review of the IJ's order on two grounds. He first contends that the IJ's finding that he lacked a reasonable fear of persecution or torture was erroneous. We agree. The primary ground for the IJ's decision was that there was no "nexus" between the harm Tomas-Ramos faced and a protected ground. But the agency incorrectly applied the statutory nexus requirement. Instead, the record compels the conclusion that Tomas-Ramos was persecuted on account of a protected ground, in the form of his family ties. And in light of that error, we cannot determine that the other reason given by the IJ for her decision – that Tomas-Ramos could avoid harm by relocating – was supported by substantial evidence. Accordingly, we grant the petition for review, vacate the agency's decision, and remand for further proceedings.

In addition, Tomas-Ramos argues that noncitizens subject to reinstated removal orders have a right to counsel at reasonable fear review hearings, and that although he was represented by counsel before the IJ, his rights were violated when his lawyer was denied

2

a chance to make a closing statement. Given our disposition of the underlying claims, we think it premature to resolve that issue. At a new hearing on remand, the IJ may well permit counsel to participate to the extent Tomas-Ramos contends is required, making it unnecessary for us to rule on the question.

## I.

Because Tomas-Ramos reentered the United States without authorization after a prior removal, his case is subject to the distinct statutory and regulatory regime governing reinstated removal orders. We begin by describing that background law, and then turn to the facts of this case.

## A.

Congress has established a streamlined process for removal of noncitizens who return illegally to this country after a previous removal order has been entered against them. In such cases, the prior adjudication of removal remains final and conclusive: The "prior order of removal is reinstated from its original date," and is "not subject to being reopened or reviewed." 8 U.S.C. § 1231(a)(5). Nor may the noncitizen pursue discretionary relief, like asylum. *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 34–35 & n.4 (2006). Implementing regulations track the statute, providing that a noncitizen who unlawfully reenters after being ordered removed "shall be removed from the United States by reinstating the prior order," without any right to a hearing before an IJ. 8 C.F.R. § 241.8(a). So in the ordinary case, a noncitizen facing a reinstated removal order is removed from the country without further legal proceedings.

3

But there is an exception to that rule. Congress also has provided that a noncitizen may not be removed to a country where he would be persecuted – that is, his "life or freedom . . . threatened" based on a protected ground. 8 U.S.C. § 1231(b)(3)(A). Nor, consistent with our country's obligations under the Convention Against Torture ("CAT"), may a noncitizen be removed to a country where he would be subject to torture. *See id.* § 1231 note (United States Policy With Respect to Involuntary Return of Persons in Danger of Subjection to Torture); *see also* 8 C.F.R. § 208.16(c) (implementing regulations). Thus, although a noncitizen may not otherwise challenge a reinstated removal order, he still may pursue two forms of relief to prevent removal to a particular country: withholding of removal under § 1231(b)(3)(A) and protection under the CAT. *See Johnson v. Guzman Chavez*, 141 S. Ct. 2271, 2282 (2021); 8 C.F.R. § 241.8(e). And if he can establish a "clear probability" that he would be persecuted or that he would "more likely than not" be tortured, then relief is mandatory and the government must withhold removal to the country in question. *See Salgado-Sosa v. Sessions*, 882 F.3d 451, 456 (4th Cir. 2018).

The relevant agencies have established a screening mechanism intended to satisfy these statutory directives "without unduly disrupting the streamlined removal process." Regulations Concerning the Convention Against Torture, 64 Fed. Reg. 8478, 8479 (Feb. 19, 1999).[1] When a noncitizen subject to a reinstated removal order expresses fear of

---

[1] Two identical sets of regulations govern the reasonable fear determination process, 8 C.F.R. §§ 208.31 and 1208.31, promulgated by the Department of Homeland Security and the Executive Office for Immigration Review, respectively. For simplicity, we refer to § 208.31 alone throughout this opinion.

returning to a country of removal, he will first be interviewed by an asylum officer to determine whether he has a "reasonable fear" of persecution or torture. 8 C.F.R. § 208.31(a)–(b). At that non-adversarial screening interview, generally held within ten days of referral, the noncitizen may present evidence, and has a right to counsel (at no expense to the government) who may present a closing statement. *Id.* § 208.31(c). The noncitizen "shall be determined to have a reasonable fear" if he establishes "a reasonable possibility" that he would be persecuted on account of a protected ground, or a "reasonable possibility" that he would be tortured in the country of removal. *Id.* If the asylum officer concludes that the noncitizen has demonstrated reasonable fear, the case is referred to an IJ for full consideration of whether the noncitizen is entitled to withholding or CAT protection. *Id.* § 208.31(e).

If the asylum officer determines that the noncitizen has not established reasonable fear – as was the case for Tomas-Ramos – the noncitizen is entitled to review by an IJ. *Id.* § 208.31(g). Unlike the provisions governing initial reasonable fear interviews, the regulations do not describe *how* IJs shall conduct these review proceedings; in particular, they do not address a right to counsel or to present evidence. Instead, they provide simply that the asylum officer's "record of determination" will be forwarded to the IJ and that the IJ will conduct a review, barring exceptional circumstances, within ten days of referral. *Id.* If the IJ concurs with the asylum officer's negative reasonable fear determination, as occurred here, the case is set for removal; if the IJ instead finds a reasonable fear, the noncitizen proceeds to full consideration of claims for withholding or CAT protection. *See id.* § 208.31(g)(1)–(2).

5

Agency manuals provide additional details regarding the reasonable fear determination process, and neither party challenges the validity of those manuals. First, the practice manual for parties in immigration court clarifies that a "reasonable fear review hearing" before an IJ "is not as comprehensive or in-depth as a withholding of removal hearing," but is instead "a review of the [] asylum officer's decision." Immigration Court Practice Manual § 7.4(e)(iv)(E) (Nov. 16, 2020). Accordingly, parties may present evidence only at the discretion of the IJ, *id.*, and – especially relevant here – whether the noncitizen may be represented by counsel also is a matter of IJ discretion, *id.* § 7.4(e)(iv)(C).

Second, the training manual for asylum officers clarifies what showing is required to establish a "reasonable possibility" of persecution or torture – the benchmark for "reasonable fear" set by 8 C.F.R. § 208.31(c). *See* U.S. Citizenship & Immigr. Servs., Asylum Division Officer Training Course: Reasonable Fear of Persecution and Torture Determinations 10–11, 17 (Feb. 13, 2017) ("Training Manual"). The "reasonable possibility" standard is the "same standard asylum officers use in evaluating whether an applicant is eligible for asylum." *Id.* at 17; *see also* 8 C.F.R. § 208.13 (governing asylum eligibility); 64 Fed. Reg. at 8485 (describing standard).[2] In this context, however,

_____

[2] This "reasonable possibility" standard is lower than the "clear probability" standard required to establish eligibility for withholding of removal, but higher than the standard required to establish a "credible fear" of persecution in expedited removal proceedings under 8 C.F.R. § 235.3. *See* 8 C.F.R. § 235.3(b)(4) (governing expedited removal proceedings and "credible fear" interviews); *id.* § 208.30(e)(1) (credible fear requires a "significant possibility" that the noncitizen can establish eligibility for asylum); *see also* Training Manual at 11 (comparing standards); 64 Fed. Reg. at 8485 (same).

"reasonable possibility" is used not to assess a noncitizen's ultimate eligibility for asylum, but rather as a screening mechanism to determine whether a noncitizen may be able to establish an entitlement to withholding or CAT protection. *See* Training Manual at 17; 64 Fed. Reg. at 8485 (explaining standard).

Importantly for this case, to establish a "reasonable possibility" of persecution in a reasonable fear proceeding, the evidence must show that a noncitizen cannot avoid the feared harm by relocating within the country of removal, or that expecting him to relocate would be unreasonable. Training Manual at 19. That is a familiar inquiry; the same showing is required for asylum eligibility, *see* 8 C.F.R. § 208.13(b)(2)(ii), and for withholding eligibility in full withholding proceedings, *see id.* § 208.16(b)(2). But just as in those contexts, if a noncitizen in reasonable fear proceedings establishes past persecution, a reasonable fear of future persecution is presumed. Training Manual at 18; *see* 8 C.F.R. § 208.13(b)(1) (asylum); *id.* § 208.16(b)(1)(i) (withholding). That presumption may be overcome only if the government establishes, by a "preponderance of the evidence," that a noncitizen can avoid persecution by relocating and that it would be reasonable to do so, or that there has been some fundamental change in circumstances. Training Manual at 18–19; *see* 8 C.F.R. § 208.13(b)(1)(i)–(ii) (asylum); *id.* § 208.16(b)(1)(i)–(ii) (withholding).

As for torture, the reasonable fear determination again tracks the standard for relief under the CAT. In assessing whether there is a "reasonable possibility" of torture, asylum officers in reasonable fear proceedings should consider all relevant evidence, including "whether or not the applicant could safely relocate to another part of his or her country[.]"

7

Training Manual at 40; *see* 8 C.F.R. § 208.16(c)(3) (directing, for relief under the CAT, consideration of "all evidence relevant to the possibility of future torture," including "[e]vidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured").

**B.**

Tomas-Ramos first entered the United States without authorization in October 2017. He was soon apprehended and ordered removed, and was removed to Guatemala in November 2017. *See* 8 U.S.C. § 1225(b)(1) (authorizing expedited removal of noncitizens apprehended near the border soon after entry). In August 2018, Tomas-Ramos reentered the United States illegally, this time accompanied by his teenage son. The Department of Homeland Security ("DHS") reinstated his prior removal order, but released him from detention, allowing him to live in Virginia (with an ankle monitor) for over a year.

In September 2019, DHS took Tomas-Ramos back into custody and sought to remove him under the reinstated removal order. Three days later, through counsel, Tomas-Ramos requested a reasonable fear interview, stating that he feared returning to Guatemala because gang members had threatened to kill him for resisting their recruitment of his son. Although a DHS officer agreed to arrange the interview, he failed to do so, and Tomas-Ramos was mistakenly deported to Guatemala. After Tomas-Ramos sued, DHS returned him to the United States for the reasonable fear proceedings at issue in this case.

During his reasonable fear interview with an asylum officer, Tomas-Ramos testified that in Guatemala, gang members had attempted to recruit his son, which Tomas-Ramos refused to allow. He stated that he was afraid to return because, in 2018, the gang members

8

had repeatedly called him on the phone, threatening to kill him and his family if he did not let his son join the gang. Those threats were credible, Tomas-Ramos believed, in part because gang members once threatened to kill him just days after they had murdered another person who attended his church. Relatedly, Tomas-Ramos testified that if he returned to Guatemala, he would not be able to attend church; if he did, gang members would recognize him as a churchgoer and target him. Tomas-Ramos's fears were confirmed, he said, when he was erroneously deported to Guatemala in 2019: He rarely left the house, but when he did, gang members spotted him and yelled his name, causing him to run away and hide. Based on that testimony, counsel for Tomas-Ramos argued in her closing statement that he had been persecuted based on membership in the particular social group of his family, and possibly his Christian religion, and likely would be harmed if returned to Guatemala.

The asylum officer found Tomas-Ramos credible but determined that he had not established a reasonable fear of persecution or torture. As to persecution, the asylum officer found that Tomas-Ramos failed to show a reasonable possibility that the harm he experienced or feared was on account of a protected characteristic (race, religion, nationality, political opinion, or membership in a particular social group). *See* 8 C.F.R. § 208.31(c) (identifying protected grounds supporting reasonable fear of persecution); 8 U.S.C. § 1231(b)(3)(A) (same for withholding of removal). The asylum officer recognized that the threats he received "could indicate [Tomas-Ramos] was harmed on account of a particular social group '[i]mmediate family members of . . . the applicant's son.'" A.R. 67. But she found that "[i]mmediate family" of Tomas-Ramos's son did not qualify as a

9

cognizable and protected "particular social group" because it "lacks social distinction." *Id.* And while religion is a protected ground, the asylum officer continued, there was no evidence that gangs targeted Tomas-Ramos on account of his Christian beliefs. As to torture, the asylum officer found that Tomas-Ramos failed to establish a reasonable possibility that the violence he feared would be perpetrated by or with the consent or acquiescence of a public official, as required for relief under the CAT. *See* 8 C.F.R. § 208.18(a)(1) (defining torture as the intentional infliction or severe threat of pain or suffering by, or with the consent or acquiescence of, a public official).

Tomas-Ramos requested that an IJ review the asylum officer's negative determination. At his review hearing before the IJ in February 2020, Tomas-Ramos was represented by counsel, who filed a memorandum and several exhibits on his behalf. Although the IJ apparently did not receive this submission before the hearing, she took a recess and reviewed it then. After resuming the hearing, the IJ questioned Tomas-Ramos extensively, and then told him that she found no reasonable fear of persecution or torture.

At that point, counsel for Tomas-Ramos asked to be heard. The IJ denied this request, explaining that the relevant agency regulations and practice manual made clear that argument was not required, and went on to explain her decision. The IJ expressed doubt that simply because Tomas-Ramos refused to let his son be recruited by the gang in the past, gang members would harm Tomas-Ramos if he returned to Guatemala now. The IJ also was skeptical of Tomas-Ramos's claim that he could not avoid harm by relocating within Guatemala because gang members would recognize him as a churchgoer wherever he moved.

10

Following the hearing, the IJ issued a one-page form order concurring with the asylum officer's negative reasonable fear determination. She checked a box indicating that Tomas-Ramos had not established a reasonable fear of persecution or torture. And she provided three reasons for her decision, which read in full: "No nexus to any protected ground. Respondent can relocate. Respondent also had difficulty articulating his fear." A.R. 1.

Tomas-Ramos timely petitioned this court for review of the IJ's ruling.[3]

## II.

We begin with Tomas-Ramos's challenge to the IJ's determination that he failed to establish a reasonable fear of persecution or torture in Guatemala. We review factual findings underlying that determination for substantial evidence, "treating them as conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary," and we review legal conclusions de novo. *Perez Vasquez v. Garland*, 4 F.4th 213, 220 (4th Cir. 2021) (internal quotation marks omitted).

---

[3] Because the streamlined process that governs reasonable fear determinations does not include an appeal to the Board of Immigration Appeals, the IJ's ruling on review pursuant to § 208.31(g)(1) is the agency's "final order" for purposes of judicial review under 8 U.S.C. § 1252(a)(1). *See Hernandez-Aquino v. Barr*, 770 F. App'x 88, 88–89 (4th Cir. 2019) (per curiam) (reviewing IJ order concurring in negative reasonable fear determination).

## A.

As a threshold matter, we address the government's argument that instead of our usual substantial evidence standard, we should apply in this case a still more deferential standard and uphold the IJ's decision so long as it was based on a "facially legitimate and bona fide reason." *See Kleindienst v. Mandel*, 408 U.S. 753, 770 (1972). While the government often has taken this position in cases challenging reasonable fear determinations, it has yet to find a circuit to agree, and our court has expressed some skepticism. *See Hernandez-Aquino*, 770 F. App'x at 88 n.2 (noting absence of cases applying the government's proposed standard and assuming without deciding that the substantial evidence standard applies). We now join two of our sister circuits and reject this argument. *See Romero v. Att'y Gen. U.S.*, 972 F.3d 334, 341 (3d Cir. 2020); *Andrade-Garcia v. Lynch*, 828 F.3d 829, 836 (9th Cir. 2016).[4]

The "facially legitimate and bona fide reason" standard of review sought by the government was developed "in a limited and distinctive setting: challenges to government decisions to deny visas." *Romero*, 972 F.3d at 340. In that context, the Executive is exercising "plenary power" and virtually unlimited discretion, delegated by Congress, to

---

[4] Additional circuits have taken the same approach we did in *Hernandez-Aquino*, reviewing and sustaining negative reasonable fear determinations under the substantial evidence standard without resolving whether the more deferential *Mandel* standard might apply. *See Cadenas-Campuzano v. Garland*, No. 21-9524, 2021 WL 5561434, at \*5 (10th Cir. Nov. 29, 2021); *Zaya v. Garland*, No. 20-3815, 2021 WL 4452422, at \*2 (6th Cir. Sept. 29, 2021); *Remy v. Barr*, 824 F. App'x 56, 57 (2d Cir. 2020) (summary order); *Lara-Nieto v. Barr*, 945 F.3d 1054, 1060 & n.5 (8th Cir. 2019); *Vasquez-Ramirez v. U.S. Att'y Gen.*, 707 F. App'x 626, 630 (11th Cir. 2017); *Telles v. Lynch*, 639 F. App'x 658, 662 (1st Cir. 2016).

make rules for the admission of noncitizens. *See Mandel*, 408 U.S. at 765–66, 769–70. Given that expansive discretion, Executive decisions about visa eligibility generally are not reviewable at all. *See id.* at 767; *Romero*, 972 F.3d at 340. *Mandel* makes a narrow exception, allowing for judicial review when a visa denial impinges on the constitutional rights of a United States citizen, but only on very limited grounds: So long as the Executive exercises its broad power "on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against" the constitutional rights in question. *Mandel*, 408 U.S. at 770.

Those principles do not translate to this context. *Mandel*'s core premise is the Executive's nearly unfettered discretion over visa determinations. *Id.* at 766–67. But here, the Executive's discretion is *not* unfettered. Instead, as described above, we are here precisely because Congress has imposed two express limits on the Executive's ability to remove a noncitizen pursuant to a reinstated removal order: The government may not remove a noncitizen to a country in which there are substantial grounds for believing he would be tortured, *see* 8 U.S.C. § 1231 note, or in which he faces a clear probability of persecution on account of a protected ground, *see id.* § 1231(b)(3)(A). And if the noncitizen meets the relevant burden of proof, then both CAT relief and withholding relief are mandatory – just as they are in the context of a full removal hearing, when we apply our already very deferential substantial evidence standard of review. *See Andrade-Garcia*, 828 F.3d at 835. This case, in other words, turns on statutory *restrictions* on the Executive's authority to remove, rendering *Mandel* inapposite. *See id.*; *Romero*, 972 F.3d at 341.

Moreover, *Mandel*'s particular standard of review has no sensible application in a case like this. Because of the factual context in which *Mandel* arose – a claim that a visa was denied not for the reason stated by the relevant executive official but instead because of disagreement with the applicant's political views – that case is focused on whether a court may "look behind" an Executive explanation for denial of admission. *Mandel*, 408 U.S. at 770; *id.* at 777 (dissenting opinion). Hence the *Mandel* rule: If the Executive acts on the basis of a "facially legitimate and bona fide reason," then the courts will not look behind that reason, second-guessing the Executive's exercise of discretion or weighing it against competing First Amendment rights. *Id.* at 770. But here, of course, nobody is suggesting that the IJ's stated reasons for her decision were not her actual reasons, or that there are constitutional interests that could be "balanc[ed]" against the IJ's determination. *Cf. id.* The *Mandel* standard simply does not speak in any helpful way to the question in this case: whether the IJ's ruling, on the factual record before her, is consistent with the statutory bar on removing Tomas-Ramos to a country where he will face torture or persecution. That question – the same one we encounter routinely in regular removal proceedings – is addressed by, and remains subject to, the substantial evidence standard of review.

**B.**

Applying this familiar standard of review, we conclude that the agency erred in finding that Tomas-Ramos failed to establish the requisite nexus to a protected ground in support of his claim of persecution. Instead, the record compels a finding that Tomas-Ramos was persecuted at least in central part because of his family relationship to his son,

14

which qualifies as a protected ground for withholding purposes. Finding no independent basis on which to affirm the IJ's decision, we vacate the agency's determination and remand for further proceedings.

1.

To establish a reasonable fear of persecution, Tomas-Ramos must show "a reasonable possibility that he [] would be persecuted on account of his [] race, religion, nationality, membership in a particular social group or political opinion" if returned to Guatemala. 8 C.F.R. § 208.31(c). He credibly testified to having received death threats from a gang attempting to recruit his son, and we have expressly held that "the threat of death qualifies as persecution." *Crespin-Valladares v. Holder*, 632 F.3d 117, 126 (4th Cir. 2011) (internal quotation marks omitted); *see also Bedoya v. Barr*, 981 F.3d 240, 246 (4th Cir. 2020) (collecting cases holding that death threats amount to persecution). Neither the asylum officer nor the IJ suggested otherwise.

Instead, both found that Tomas-Ramos failed to establish a reasonable possibility that the persecution he suffered was "on account of" – that is, had a "nexus" to – a statutorily protected ground. Those grounds include, as noted above, membership in a "particular social group." *See* 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.31(c). The asylum officer recognized that Tomas-Ramos might have been threatened because of his relationship to his son – that is, on account of his membership in his son's immediate family – but held that immediate family is not a qualifying "particular social group" because it "lacks social distinction." A.R. 67. On that ground alone, the asylum officer held that the

15

gang's threats against Tomas-Ramos did not give rise to a reasonable fear of persecution based on a protected ground.

That reasoning was in error. As we have explained, "the family provides a prototypical example of a particular social group," *Crespin-Valladares*, 632 F.3d at 125 (internal quotation marks omitted), and familial ties – like Tomas-Ramos's ties to his son – qualify as a protected ground for purposes of a persecution claim. *See id.* (collecting cases from other circuits); *see also, e.g.*, *Salgado-Sosa*, 882 F.3d at 457 ("It is clear" that "family qualifies as a 'particular social group,' protected for purposes of [] asylum and withholding of removal claims."). The government concedes this point, and we need not belabor it here.

The government argues, however, that this error does not matter, because the IJ correctly held that there was no nexus between Tomas-Ramos's relationship to his son and the threats against him. We cannot agree. Tomas-Ramos's consistent testimony – which the asylum officer found credible, and the IJ never questioned – was that gang members threatened to kill him because he resisted their efforts to recruit his son, preventing him from joining the gang. And we have held that the nexus requirement is satisfied in precisely that scenario: In *Hernandez-Avalos v. Lynch*, 784 F.3d 944, 949–50 (4th Cir. 2015), we concluded that a mother threatened by gang members because she refused to allow her son to join the gang had been persecuted "on account of" her membership in her son's nuclear family. We recognized that the gang members were motivated as well by a desire to recruit. *Id.* But "[a]s we have repeatedly emphasized," to establish nexus, "it is enough that the protected ground be *at least one* central reason for the persecution." *Perez Vasquez*, 4

F.4th at 224 (internal quotation marks omitted); *see Hernandez-Avalos*, 784 F.3d at 950 (applying "one central reason" standard). Because the evidence established that the gang threatened "*Hernandez*, rather than another person, because of her family connection to her son," we held, any reasonable adjudicator would be compelled to conclude that she had been persecuted "on account of" a protected ground. *Hernandez-Avalos*, 784 F.3d at 950.

This case is governed squarely by *Hernandez-Avalos*, and we reach the same result. As in *Hernandez-Avalos*, there is "no evidence" in this record that Tomas-Ramos "would have been selected as the recipient of [the gang's] threats absent [his] familial connection" to his son. *Id.* at 950 n.7. The government recognizes the import of *Hernandez-Avalos*, suggesting only that it can be distinguished because the petitioner there gave a more "compelling and detailed" account of her past harm than Tomas-Ramos. Respondent's Br. 37. But Tomas-Ramos's testimony provided, clearly, the detail that counts: that gang members were threatening him "because I do not allow my son to join the gangs." Supp. A.R. 20; *see also* A.R. 84 ("[T]hey wanted my son to join and as a father I didn't want my son to join and so they threatened my whole family."). That is enough to establish a reasonable possibility that he was threatened at least in central part because of his parental relationship to his son, and thus established the requisite nexus to a protected ground. The agency's contrary finding, and the government's argument in support of it, are foreclosed by our precedent. *See Hernandez-Avalos*, 784 F.3d at 950. We therefore hold that the

17

record compels a finding that Tomas-Ramos was subject to past persecution on account of his family ties.[5]

2.

In a footnote to its brief, the government argues that even if the IJ erred in finding "[n]o nexus to any protected ground," we still may affirm the negative reasonable fear determination on an alternative basis: the IJ's additional finding that "[Tomas-Ramos] can relocate." A.R. 1.[6] Again, we cannot agree.

As an initial matter, we do agree with the government that a noncitizen's ability to avoid persecution by relocating within the country of removal is relevant to the reasonable fear determination. Tomas-Ramos contends that relocation is inapposite in the reasonable fear process and may only be considered in full withholding proceedings, but agency regulations and manuals dictate otherwise.

---

[5] Under our deferential substantial evidence standard, we will not disturb the agency's finding that Tomas-Ramos failed to establish the requisite nexus to his Christian religion. As the asylum officer reasoned, there is insufficient evidence that his faith was a central reason why gang members threatened him. On Tomas-Ramos's own account, gang members did not mention his religion in their threats. And although Tomas-Ramos reports that gang members killed a man belonging to his church, they did not inform him *why* they killed that man, so there is no ground for concluding that it was an act of religious persecution.

[6] The government does not argue that the IJ's third finding – that "[Tomas-Ramos] also had difficulty articulating his fear," A.R. 1 – provides a basis for affirmance, and we agree. We do not understand that finding to be an independent ground for the IJ's determination; rather, it appears to have been offered as an explanation for why the IJ was not persuaded that Tomas-Ramos had established nexus to a protected ground.

18

The ultimate question in a reasonable fear proceeding, as we have explained, is whether a noncitizen subject to a reinstated removal order nevertheless may be eligible for mandatory relief in the form of withholding of removal or CAT protection. And the ability to relocate is relevant to both of those eligibility determinations. *See* 8 C.F.R. § 208.16(b)(1)–(3), (c)(3)(iii). To be sure, as Tomas-Ramos emphasizes, the regulation governing reasonable fear determinations for noncitizens with reinstated removal orders, *id.* § 208.31, does not specify that the ability to relocate should be considered in assessing whether there is a "reasonable possibility" of persecution or torture – or, for that matter, specify any other information that should be considered. But the same "reasonable possibility" standard is defined in greater detail in the immediately preceding regulation, *id.* § 208.30, which governs screening determinations made when a noncitizen barred from asylum relief on other grounds seeks the same mandatory withholding of removal or CAT protection at issue here. And in that context, the regulation specifies that in determining whether there is a "reasonable possibility" of persecution or torture, the asylum officer should consider whether the noncitizen could avoid such harm by relocating to another part of the country of removal. *See id.* § 208.30(e)(2)(ii) (persecution); *id.* § 208.30(e)(3)(ii) (torture). We see no reason why a different rule would apply to "reasonable possibility" assessments under § 208.31 – like Tomas-Ramos's – and indeed, the manual for asylum officers conducting such reasonable fear proceedings instructs, consistent with § 208.30, that "the evidence must establish that the applicant could not avoid future persecution by relocating" or that expecting him to do so would be unreasonable. Training Manual at 19; *see also* A.R. 150 (asylum officer asking questions under the header "Internal Relocation").

19

Nevertheless, the IJ's finding that "[Tomas-Ramos] can relocate" is not an independent ground for affirmance, because that finding is called into question by our determination that Tomas-Ramos has established past persecution. That finding is critical to the relocation inquiry: As the agency's own manuals make clear, a showing of past persecution gives rise to a presumption of a reasonable fear of future persecution, and that presumption may be overcome only if it is established, by a preponderance of the evidence, that "under all the circumstances, it would be reasonable for the applicant to relocate." Training Manual at 19; *see also* A.R. 66–67 (asylum officer reasonable fear determination checklist). The agency's guidance on this point tracks the regulation governing withholding of removal, which provides for the same presumption, rebuttable by the same preponderance of the evidence finding that the noncitizen may reasonably relocate to avoid future harm. *See* 8 C.F.R. § 208.16(b)(1)(i)(B). And again tracking the regulation, *id.* § 208.16(b)(1)(ii), the agency's guidance puts the burden of proof on rebuttal on the government, requiring that "DHS establish[] by a preponderance of evidence" the availability of relocation. Training Manual at 19.[7]

---

[7] The government suggests that it is "not entirely clear" that the regulatory rebuttable presumption framework should apply in abbreviated reasonable fear proceedings. Respondent's Br. 40 n.10. Whether the agency must or should use that framework in the reasonable fear context is not a question before us. The agency's own guidance indicates that it has made the decision to do so, and as we noted at the outset, no party to this case challenges the validity of that guidance. The government's primary argument on this point – that there is no presumption because Tomas-Ramos failed to establish past persecution – is incorrect for the reasons we have given.

Because the IJ believed – incorrectly – that Tomas-Ramos had not established past persecution, she never had the opportunity to assess relocation under the proper framework.[8] In evaluating Tomas-Ramos's testimony that he could not safely relocate because gang members would search for him wherever he moved, the IJ could not take into account what is now presumed: that Tomas-Ramos has a well-founded and reasonable fear that if he is returned to Guatemala, he again will be subjected to persecution based on his relationship to his son. In making her relocation finding, the IJ could not have been expected to, and did not, refer at any point to rebuttal of that presumption, or to the preponderance of the evidence standard. And unsurprisingly, the IJ never considered whether "DHS [had] establish[ed] . . . that, under all the circumstances, it would be reasonable for [Tomas-Ramos] to relocate." Training Manual at 19.

In these circumstances, we follow our ordinary rule of vacating and remanding so that the agency may make the relevant factual assessments under the proper standard and in the first instance. *See Alvarez Lagos v. Barr*, 927 F.3d 236, 252 (4th Cir. 2019); *see also Portillo Flores v. Garland*, 3 F.4th 615, 636–37 (4th Cir. 2021) (en banc) (holding that remand is the "appropriate treatment when the grounds upon which the administrative agency acted are not clearly disclosed and adequately sustained" (internal quotation marks omitted)).

---

[8] The asylum officer, who made the same past-persecution error as the IJ – though on different grounds – never addressed relocation at all.

3.

Given our holding, we also remand Tomas-Ramos's torture claim to the agency for further consideration. The IJ did not specify the ground on which she found that Tomas-Ramos had failed to establish a reasonable fear of torture. Indeed, the IJ never mentioned torture, in her written order or at the hearing. The asylum officer did address torture, concluding that Tomas-Ramos failed to show a "reasonable possibility" that government officials would consent to or acquiesce in any torture. But the IJ made no similar finding, and as the government concedes, we may affirm only on grounds identified in the IJ's final agency determination. *See Cordova v. Holder*, 759 F.3d 332, 337 (4th Cir. 2014) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943)).

That leaves us, again, with the IJ's finding that "[Tomas-Ramos] can relocate," A.R. 1, on which the government relies for affirmance of the negative reasonable fear determination with respect to torture. As the government argues, and as described at the outset, the ability to relocate indeed bears on eligibility for CAT relief. *See* 8 C.F.R. § 208.16(c)(3)(ii). But it is only one among several non-exhaustive factors laid out in the governing regulation, all of which must be considered. *Id.* § 208.16(c)(3) ("all evidence relevant to the possibility of future torture shall be considered, including, but not limited to" the factors in § 208.16(c)(3)(i)–(iv)). And once again, the agency's guidance parallels the regulatory regime, instructing that "the adjudicator must consider all relevant evidence, *including but not limited to the possibility of relocation* within the country of removal." Training Manual at 40 (emphasis added). So it is not clear that the IJ's relocation finding, without more, was intended to dispose of Tomas-Ramos's torture claim, or that if it was,

22

we could affirm the negative reasonable fear determination on that ground alone. *Cf. Ponce-de Ascencio v. Garland*, No. 21-1147, slip op. at 17–18 (4th Cir. Jan. 12, 2022) (affirming denial of CAT relief only because record indicates that agency did *not* restrict its consideration to relocation alone).

But in any event, as we discuss above, the IJ's relocation finding has been vacated so that the agency may reconsider it in light of our holding that Tomas-Ramos has established past persecution. It would make little sense to affirm the denial of Tomas-Ramos's torture claim on the basis of a finding we have directed the agency to rethink. Because the IJ offered no other reason for concluding that Tomas-Ramos failed to establish a reasonable fear of torture, we remand that claim for reconsideration, as well. *See Diaz de Gomez v. Wilkinson*, 987 F.3d 359, 367 (4th Cir. 2021) (remanding all claims, including claims for CAT protection, where agency erred in failing to give applicant the benefit of the presumption of a well-founded fear of persecution).

**III.**

Finally, we briefly address Tomas-Ramos's remaining argument: that the IJ violated a statutory right to counsel by denying his counsel's request to speak at the end of his reasonable fear review hearing. Given our disposition of Tomas-Ramos's underlying claims, which we have remanded for a new hearing, we think it would be premature to resolve this question today.

As noted above, the regulation governing these reasonable fear proceedings gives applicants a right to counsel – and specifically, a right to have counsel make closing

23

arguments – at their initial interviews before asylum officers, but is silent as to any right to counsel at IJ review hearings. *Compare* 8 C.F.R. § 208.31(c) (asylum officer interview), *with id.* § 208.31(g) (IJ review). And Tomas-Ramos has not asserted a right to counsel at IJ review hearings under the regulations at § 208.31. He contends, however, that noncitizens subject to reinstated removal orders have a *statutory* right to counsel under 8 U.S.C. § 1362, which provides generally that "[i]n any removal proceedings before an immigration judge . . . the person concerned shall have the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose." And he points for support to a recent decision from the Ninth Circuit adopting that view. *See Orozco-Lopez v. Garland*, 11 F.4th 764, 777 (2021).

Tomas-Ramos, of course, *was* represented by counsel at his reasonable fear review hearing before the IJ. His lawyers entered appearances on the record, filed a memorandum with several exhibits, and had a colloquy with the IJ about that memorandum at the start of the hearing. So it is important to be clear about the precise nature of Tomas-Ramos's objection. On appeal, Tomas-Ramos alludes to the possibility that his lawyers might have conducted direct examination or otherwise participated during the review hearing. But before the IJ, the only form of participation his lawyers sought and were denied was the opportunity to make a closing statement after the IJ had indicated her decision. And even then, they did not argue that they were *entitled*, under § 1362 or any other law, to that opportunity.

On this record, and given the posture of this case, we see no need to resolve whether, as the Ninth Circuit held in *Orozco-Lopez*, there is a general right to counsel in reasonable

24

fear review hearings before IJs. Even if there were such a right – a question on which, to be clear, we take no position – Tomas-Ramos was represented by counsel before the IJ here. The more specific right Tomas-Ramos is asserting – to have counsel make a closing statement – is not addressed by *Orozco-Lopez*. And we need not address it now, because this case is not over. Given our disposition of Tomas-Ramos's substantive challenge to the IJ's negative reasonable fear determination, it will return to the agency for a new hearing. At that hearing, we can expect that the IJ again will allow Tomas-Ramos to be represented by counsel, and the IJ also may allow counsel to participate to the extent Tomas-Ramos contends is required, obviating any need to address these issues. At a minimum, counsel will have the opportunity to request whatever forms of participation they believe to be required, and to object on the record if they are denied, giving the IJ an opportunity to consider those objections and sharpening the issues for review.[9]

## IV.

For the reasons given above, the petition for review is granted, the agency's determination is vacated, and the case is remanded for further proceedings consistent with this opinion.

*PETITION FOR REVIEW GRANTED;*
*VACATED AND REMANDED*

---

[9] For the same reason, we need not now address Tomas-Ramos's argument that his Fifth Amendment due process right to a "meaningful opportunity to be heard," *see Rusu v U.S. INS*, 296 F.3d 316, 322 (4th Cir. 2002), was violated when his counsel was not permitted to make a closing statement.

25