**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-3024
_____

CARMEN AMANDA BARRIOS DUENAS,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of Orders from
the Department of Homeland Security and
the Executive Office for Immigration Review
(Agency Case No. A209-228-946)

Immigration Judge: Shana Chen
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 2, 2023
_____

Before: SHWARTZ, MATEY, and SCIRICA, <u>Circuit Judges</u>.

(Filed: October 3, 2023)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**SHWARTZ**, <u>Circuit Judge</u>.

Petitioner Carmen Amanda Barrios Duenas seeks review of an Immigration Judge's ("IJ") ruling that she lacked a reasonable fear of persecution or torture and thus was not entitled to relief from reinstatement of her prior order of removal. Although we reject the Government's contention that the petition for review is untimely, we agree with the IJ's decision and will deny the petition.

I

Petitioner is a native and citizen of Guatemala who first entered the United States in June 2016 without authorization. Department of Homeland Security ("DHS") apprehended and removed her pursuant to an expedited order of removal on June 23, 2016. She reentered the United States without authorization in July 2019. DHS apprehended her near the southern border and reinstated her prior order of removal on July 6, 2019.

After DHS reinstated her removal order, Petitioner claimed a fear of persecution and torture in Guatemala, and an asylum officer conducted a reasonable fear interview on November 17, 2021. At the interview, Petitioner explained that a gang member named Ronald had killed her uncle after he failed to make extortion payments to Ronald's gang. Two years after her uncle was killed, Petitioner was waiting at a bus stop when she was accosted by Ronald and an associate. Ronald told her that "the same thing that happened to your uncle will happen to you." AR 279. Petitioner reported the incident to the police, but they did not investigate, and she fled days later. Petitioner stated that although

2

Ronald had since been killed, she fears that Ronald's associate will harm her if she returns to Guatemala.

The asylum officer issued a negative reasonable fear determination, see 8 C.F.R. § 208.31(f), concluding that Petitioner's testimony was partially credible, but that she (1) did not experience harm rising to the level of persecution, (2) was not targeted because of any protected characteristic, and (3) had not demonstrated a reasonable possibility of torture within the meaning of the Convention Against Torture ("CAT") because she was not tortured in the past and had not shown that any future harm would be inflicted by or with the consent or acquiescence of a government official in Guatemala.

Petitioner requested review of the asylum officer's determination before an IJ, see 8 C.F.R. § 208.31(f)-(g), and the IJ convened a reasonable fear hearing on September 27, 2022.[1] The IJ reviewed Petitioner's documents, including the reasonable fear interview, and considered Petitioner's testimony that she (1) fears Ronald's associate, "Juanaco," based on the 2019 incident at the bus stop, (2) was "very close" with her uncle and thus Ronald might have believed that she knew about Ronald's extortion, AR 62-63, and (3) reported the threat to the police, who "did all of the paperwork for everything," before fleeing the country, AR 73-74. Petitioner added that no one from Guatemala had contacted or threatened her since she left, but that she nonetheless fears returning because Juanaco is still in Guatemala and has "replace[d]" Ronald. AR 70. At the conclusion of the hearing, the IJ found that Petitioner was credible but that she failed to establish: (1) a

_____

[1] The hearing was initially held on April 11, 2022, but a part of the hearing was not recorded and so the IJ convened the September 2022 hearing.

3

reasonable fear of future persecution because Ronald was killed and there was no evidence that Juanaco would harm her as he has not tried to locate or threaten her since the 2019 incident; and (2) a reasonable fear of torture because the single threat she received was neither "concrete" nor connected to the Guatemalan government. AR 6.

After the September 27, 2022 hearing, the IJ issued a decision. On October 27, 2022, Petitioner filed this petition for review.

II

When a noncitizen unlawfully reenters the United States after having been previously removed, "the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed," the noncitizen "is not eligible and may not apply for any relief," and thus the noncitizen can be removed "at any time." 8 U.S.C. § 1231(a)(5). A noncitizen subject to a reinstated removal order, however, may seek withholding of removal if she expresses a reasonable fear of persecution or torture, 8 C.F.R. § 241.8(e); Fernandez-Vargas v. Gonzales, 548 U.S. 30, 35 n.4 (2006) (citing 8 U.S.C. § 1231(b)(3)(A)), in which case she is referred to an asylum officer for a reasonable fear interview, 8 C.F.R. § 241.8(e); Regulations Concerning the Convention Against Torture, 64 Fed. Reg. 8478, 8485 (Feb. 19, 1999).

If the asylum officer concludes that the noncitizen has met the reasonable fear standard,[2] the officer must refer the case to an IJ "for full consideration" of the

---

[2] To demonstrate that she has "a reasonable fear of persecution or torture," a noncitizen must establish "a reasonable possibility that . . . she would be persecuted on account of . . . her race, religion, nationality, membership in a particular social group or

4

noncitizen's eligibility for withholding of removal, which is conducted with all procedural requirements attendant to removal proceedings, including appeals to the Board of Immigration Appeals ("BIA"). 8 C.F.R. § 208.31(e). If the officer concludes that the noncitizen does not have a reasonable fear of persecution or torture, she must then ask whether the noncitizen wishes to have an IJ review the officer's "negative determination," and at that time the noncitizen "must indicate" whether she desires such review. Id. § 208.31(f)-(g). If the noncitizen seeks IJ review and the IJ "concurs with the asylum officer's determination that the [noncitizen] does not have a reasonable fear of persecution or torture," then the noncitizen is removed without further administrative review. Id. § 208.31(g)(1).

## III

## A[3]

Petitioner seeks judicial review of the IJ's ruling that she does not have a reasonable fear of persecution or torture if removed to Guatemala. We have jurisdiction only to review "final order[s] of removal." 8 U.S.C. § 1252(a)(1); Khouzam v. Att'y

---

political opinion, or a reasonable possibility that . . . she would be tortured in the country of removal." 8 C.F.R. § 208.31(c).

[3] DHS has the authority to reinstate Petitioner's prior removal order under 8 U.S.C. § 1231(a)(5) and the exclusive jurisdiction to make the negative reasonable fear determination under 8 C.F.R. § 208.31(a). The IJ has exclusive jurisdiction to review a negative reasonable fear determination under 8 C.F.R. §§ 208.31(a), (f), and (g). We have jurisdiction to determine our jurisdiction, Orie v. Dist. Att'y Allegheny Cnty., 946 F.3d 187, 190 n.7 (3d Cir. 2019), and we review questions of our own jurisdiction de novo, Castro v. Att'y Gen., 671 F.3d 356, 364 (3d Cir. 2012).

Gen., 549 F.3d 235, 247 (3d Cir. 2008).[4] Once a final order of removal is issued, the

noncitizen seeking review must file a petition for review within thirty days. 8 U.S.C.

§ 1252(b)(1). This time limit is jurisdictional. Stone v. I.N.S., 514 U.S. 386, 405 (1995);

Ruiz-Martinez v. Mukasey, 516 F.3d 102, 105-06 (2d Cir. 2008). Here, we must

determine whether the petition for review is timely where it was filed within thirty days

of the IJ's negative reasonable fear determination but several years after the order of

removal was reinstated.[5]

The Supreme Court has instructed that a withholding-only determination, such as

an IJ's reasonable fear determination, is "not itself a final order of removal." Nasrallah v.

Barr, 140 S. Ct. 1683, 1691 (2020); see also Johnson v. Guzman Chavez, 141 S. Ct.

2271, 2287 (2021) (stating that final orders of removal and orders resolving withholding-

only proceedings are "two separate orders"). On the surface, these cases are at odds with

our statement in Bonilla v. Sessions, 891 F.3d 87, 90 n.4 (3d Cir. 2018), that an IJ's

negative reasonable fear determination "constitutes a final order of removal." However,

---

[4] The Immigration and Nationality Act ("INA") allows a noncitizen to channel any related claims into her petition for review of her final order of removal. See 8 U.S.C. § 1252(b)(9); E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec., 950 F.3d 177, 184 (3d Cir. 2020) (noting that § 1252(b)(9) allows us to review "all questions of law and fact" that "aris[e] from any action taken or proceeding brought to remove [a noncitizen]"). Thus, this provision allows us to review, among other things, a noncitizen's request for relief from removal if a final order of removal has been entered. 8 U.S.C. § 1252(b)(9); see Nasrallah v. Barr, 140 S. Ct. 1683, 1691 (2020); Tazu v. Att'y Gen., 975 F.3d 292, 299 (3d Cir. 2020). Therefore, the critical question remains whether there is a "final order of removal" over which we have jurisdiction.

[5] We have held that a reinstatement order is itself a final order of removal and have no reason to reconsider that conclusion here. Dinnall v. Gonzales, 421 F.3d 247, 251 n.6 (3d Cir. 2005).

6

we may only depart from our precedent, "absent en banc reconsideration," where "intervening legal developments have undercut [its] decisional rationale" such that it "no longer has any vitality or is patently inconsistent with subsequent legal developments." United States v. Stimler, 864 F.3d 253, 263 (3d Cir. 2017), vacated in part on other grounds by United States v. Goldstein, 902 F.3d 411 (3d Cir. 2018) (quotations and emphasis omitted). Nasrallah and Johnson do not "undercut the decisional rationale" animating Bonilla's holding that an extant order of removal does not become "final" for purposes of judicial review until the conclusion of withholding-only proceedings.[6]

Nasrallah did not involve the timing or availability of judicial review in withholding-only proceedings. Rather, Nasrallah addressed the "narrow question" of whether § 1252(a)(2)(C), which precludes judicial review of factual challenges to "a final order of removal" in certain cases, also precludes review of factual challenges to a CAT

---

[6] This view comports with the reasoning of several sister circuits, see, e.g., Jimenez-Morales v. Att'y Gen., 821 F.3d 1307, 1308 (11th Cir. 2016) ("[T]he reinstated removal order does not become final until the reasonable fear proceeding is completed."); Luna-Garcia v. Holder, 777 F.3d 1182, 1186 (10th Cir. 2015) (same); Ortiz-Alfaro v. Holder, 694 F.3d 955, 958 (9th Cir. 2012) (same), as well as the Supreme Court's definition of finality of agency action, Bennett v. Spear, 520 U.S. 154, 177-78 (1997); see also Yusupov v. Att'y Gen., 518 F.3d 185, 195 (3d Cir. 2008). An agency order is final when it "mark[s] the 'consummation' of the agency's decision-making process," determines "'rights or obligations,'" or occasions "'legal consequences.'" Yusupov, 518 F.3d at 195 (quoting Bennett, 520 U.S. at 178). Because "the rights, obligations, and legal consequences of the reinstated removal order are not fully determined until the reasonable fear and withholding of removal proceedings are complete," Luna-Garcia, 777 F.3d at 1185, "the reinstated removal order is not final until the reasonable fear proceedings are complete," id. at 1185-86 (relying on the general definition of the finality of agency action to hold that a negative reasonable fear determination is reviewable because "[t]he INA defines finality [solely] in terms of availability of review by the BIA," but a reinstated removal order is not appealable to the BIA and, therefore, the statutory definition of finality specific to the immigration context provides no guidance).

order. 140 S. Ct. at 1688, 1690. In holding that it does not, the Court had no need to examine the concept of finality for purposes of judicial review because its holding turned on the meaning of the term "order of removal." Indeed, the Court repeatedly referenced 8 U.S.C. § 1101(a)(47)(A), which defines the term "order of removal," but it never mentioned the neighboring provision § 1101(a)(47)(B), which provides the INA's definition of "final," or otherwise discussed when an order of removal, let alone a reinstated order of removal, becomes final.

In <u>Johnson</u>, the Court held in relevant part that 8 U.S.C. § 1231 prohibits noncitizens subject to a reinstated order of removal from obtaining "a bond hearing while they pursue withholding of removal." 141 S. Ct. at 2280. The Court rejected the argument that a reinstated removal order does not become "administratively final," as the term is used in § 1231, until withholding-only proceedings conclude. <u>Id.</u> at 2287. The Court, however, expressly declined to decide whether its interpretation of "administratively final" applied to the phrase "final order of removal" as used in § 1252, the applicable statute here, which the <u>Johnson</u> Court observed "uses different language than § 1231 and relates to judicial review of removal orders rather than detention." 141 S. Ct. at 2285 n.6. We have similarly distinguished the definition of "finality" for purposes of detention from finality "for the purposes of timely petitioning for judicial review" and rejected the view that the two are interchangeable. <u>See, e.g.</u>, <u>Guerrero-Sanchez v. Warden York Cnty. Prison</u>, 905 F.3d 208, 218-19 & n.8 (3d Cir. 2018) (quotation marks and citation omitted), <u>abrogated on other grounds by</u> <u>Johnson v. Arteaga-Martinez</u>, 142 S. Ct. 1827 (2022); <u>see also</u> <u>Padilla-Ramirez v. Bible</u>, 882 F.3d

8

826, 836 (9th Cir. 2017) (holding that the reinstated removal order was "final for detention purposes even though it lack[ed] finality for purposes of judicial review of [the petitioner's] withholding-only claim").  Therefore, Nasrallah and Johnson are not "patently inconsistent" with Bonilla and thus do not constitute intervening case law that strips us of jurisdiction over the present petition for review.  Stimler, 864 F.3d at 263.

Our conclusion is further supported by the "well-settled and strong presumption" that Congress intends agency action, including immigration decisions, to be subject to judicial review.  Guerrero-Lasprilla v. Barr, 140 S. Ct. 1062, 1069 (2020) (quotation marks and citation omitted).  "The presumption can only be overcome by clear and convincing evidence of congressional intent to preclude judicial review."  Id. (quotations omitted).  Nasrallah and Johnson both interpreted specific statutes but neither considered whether the statutes at issue foreclosed judicial review in the context of reinstated removal orders and requests for relief from such orders.  Thus, these cases do not embody a "strong indication" that judicial review of an IJ's withholding-only ruling is precluded.  Id. at 1070.  Concluding otherwise would also run directly counter to the Court's admonishment in Nasrallah that its decision "does not affect the authority of the courts of appeals to review CAT orders."  140 S. Ct. at 1693.[7]

---

[7] Because the reinstatement order is necessarily entered before the request for relief from such an order is resolved, 8 C.F.R. § 241.8(e), holding that a reinstated removal order is final in all respects would almost always mean that a petitioner could not "timely petition for review of any IJ decisions denying him relief or finding that he does not have a reasonable fear," Ortiz-Alfaro, 694 F.3d at 958.  To be sure, a petitioner in those circumstances could theoretically obtain judicial review if withholding-only proceedings concluded within thirty days of the reinstatement order, but such an outcome is highly unlikely.  Here, by way of example, Petitioner's removal order was reinstated in

9

For these reasons, we see no "clear and convincing evidence" that Congress or the

Court intended to bar judicial review in these circumstances. Guerrero-Lasprilla, 140 S.

Ct. at 1069; see also Kolov v. Garland, 78 F.4th 911, 929 (6th Cir. 2023) (Murphy, J.,

concurring) ("In the end, whether the Supreme Court's decisions in Nasrallah and

Johnson have ushered in these significant changes to longstanding judicial-review

practices is for the Supreme Court to decide.").[8]  As such, under our binding precedent,

the petition for review is timely and thus we have jurisdiction over it.[9]

---

July 2019, but her request for review of the reasonable fear determination was not denied until September 2022.  See also Argueta-Hernandez v. Garland, 73 F.4th 300, 301-02 (5th Cir. 2023) (reinstatement in September 2019 but denial of relief in April 2022).  To require the petition to be filed within thirty days of the reinstatement order would thus effectively bar judicial review of the subsequent reasonable fear determination.

[8] Additionally, holding that Nasrallah and Johnson preclude judicial review in this context could have significant ramifications for the availability of judicial review in other contexts, including motions to reopen and "mixed" BIA decisions (those in full removal proceedings that affirm the IJ's removability finding but remand for further consideration of withholding claims).  See Kolov, 78 F.4th at 925-28 (Murphy, J., concurring).

[9] Several of our sister circuits have also held that their similar precedent remains viable after Nasrallah and Johnson.  See Alonso Juarez v. Garland, No. 15-72821, 2023 WL 5811043 at *8-10 (9th Cir. Sept. 8, 2023); Kolov, 78 F. 4th at 918-19; Arostegui-Maldonado v. Garland, 75 F.4th 1132, 1137 (10th Cir. 2023); Salinas-Montenegro v. Garland, No. 21-3, 2023 WL 3243985, at *1 n.1 (9th Cir. May 4, 2023).  Another sister circuit, without directly addressing Nasrallah and Johnson, held that an IJ's reasonable fear determination constituted a "final order" for purposes of judicial review.  Tomas-Ramos v. Garland, 24 F.4th 973, 980 n.3 (4th Cir. 2022).  On the other hand, the Court of Appeals for the Fifth Circuit has concluded that Nasrallah and Johnson abrogated its precedent because "[b]oth cases make clear that the finality of the order of removal does not depend in any way on the outcome of withholding-only proceedings."  Argueta-Hernandez v. Garland, 73 F.4th 300, 303 (5th Cir. 2023) (quotations and alterations omitted).  Additionally, the Court of Appeals for the Second Circuit held that Nasrallah and Johnson establish that an IJ's withholding-only decision is not a final order of removal for purposes of judicial review.  Bhaktibhai-Patel v. Garland, 32 F.4th 180, 190-91 (2d Cir. 2022).

10

B[10]

Having concluded that we have jurisdiction, we next examine whether the IJ's

conclusion that Petitioner did not establish a reasonable fear of persecution or torture is

supported by substantial evidence.

Even assuming Petitioner is a member of a cognizable particular social group,

Petitioner has not shown that she has a reasonable fear of persecution. "[P]ersecution"

encompasses "threats to life, confinement, torture, and economic restrictions so severe

that they constitute a threat to life or freedom." Fatin v. I.N.S., 12 F.3d 1233, 1240 (3d

Cir. 1993). In evaluating an unfulfilled threat such as the one here, we examine whether

the threat is "concrete and menacing."[11] Herrera-Reyes v. Att'y Gen., 952 F.3d 101, 107-

08 (3d Cir. 2020). An unfulfilled threat is sufficiently "concrete and menacing" to

establish past persecution when the threat, "considered in the context of the full record,"

presents a "severe affront" to a petitioner's "life or freedom." Id. (quotations omitted).

Here, the lone unfulfilled threat Petitioner received from Ronald in 2019 did not

pose a "severe affront[] to [her] life or freedom." Id. Petitioner only encountered Ronald

on one occasion when he approached her and told her the same thing that had happened

to her uncle would happen to her. Ronald did not identify any specific person who would

---

[10] We review the IJ's denial of withholding of removal and CAT relief for substantial evidence. Romero v. Att'y Gen., 972 F.3d 334, 342 (3d Cir. 2020). "When we review for substantial evidence, findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." Id. at 340 (quotations omitted).

[11] "A threat is 'concrete' when it is 'corroborated by credible evidence,' and it is 'menacing' when it reveals an 'intention to inflict harm.'" Doe v. Att'y Gen., 956 F.3d 135, 143 (3d Cir. 2020) (quoting Herrera-Reyes, 952 F.3d at 108).

carry out the threat, did not harm Petitioner, and did not threaten her son who was present during the encounter or any other family member. Following the incident, Ronald did not harm or threaten Petitioner or her family and there is no indication that he or his associates have tried to locate her again. While Ronald's threat may have been distressing, "persecution does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional," Fatin, 12 F.3d at 1240, and Petitioner has not demonstrated a reasonable possibility that she will suffer a "severe affront" to her "life or freedom," Herrera-Reyes, 952 F.3d at 108; see also Voci v. Gonzales, 409 F.3d 607, 615 (3d Cir. 2005) ("[I]solated incidents that do not result in serious injury do not rise to the level of persecution."). Therefore, substantial evidence supports the IJ's finding that Petitioner did not show a reasonable fear of persecution in Guatemala.

The IJ's finding that Petitioner did not establish a reasonable fear of torture is also supported by substantial evidence.[12] Petitioner testified that Ronald threatened to harm her in the same way her uncle had been harmed, but Ronald is now dead and there is no evidence that Juanaco or his associates ever threatened, harmed, or even attempted to locate Petitioner or any of her family members after the 2019 incident. Moreover, there

---

[12] To succeed here, Petitioner must show that she has a reasonable fear of:

(1) an act causing severe physical or mental pain or suffering; (2) intentionally inflicted; (3) for an illicit or proscribed purpose; (4) by or at the instigation of or with the consent or acquiescence of a public official who has custody or physical control of the victim; and (5) not arising from lawful sanctions.

Myrie v. Att'y Gen., 855 F.3d 509, 515 (3d Cir. 2017) (quotations omitted).

is no evidence of any connection between Juanaco and the Guatemalan government. While there is general country conditions evidence showing widespread corruption and crime in Guatemala, such evidence is insufficient to show that Petitioner faces a particularized risk of torture by or with the consent or acquiescence of a government official. See Romero v. Att'y Gen., 972 F.3d 334, 343 (3d Cir. 2020). As such, substantial evidence supports the IJ's conclusion that Petitioner did not show a reasonable fear of torture.

III

For the foregoing reasons, we will deny the petition for review.